(No. 14695.—Reversed and remanded.)

ELIZABETH K. CARROLL et al. vs. JOHN M. ECKLEY et al. Defendants in Error.—(HARRIET H. HAYES, Plaintiff in Error.)

*Opinion filed October 21, 1922—Rehearing denied Dec. 8, 1922.*

1. WILLS—*when presumption of undue influence arises.* A presumption of undue influence is created where a beneficiary is instrumental in procuring a will to be made, and this presumption must be rebutted by proof that said party did not abuse or betray the confidence reposed in him and that the execution of the will was the free and voluntary act of the testator.

2. SAME—*when issue of undue influence should be submitted to jury—instructions.* Where there is evidence tending to show that the chief beneficiary under a will, who would not otherwise have been a beneficiary, was instrumental in procuring it to be made the court is required to submit the issue of undue influence to the jury under proper instructions, even though the court may be of opinion that the evidence is not sufficient on that point to support a verdict against the will.

WRIT OF ERROR to the Circuit Court of White county; the Hon. J. C. EAGLETON, Judge, presiding.

CREIGHTON & THOMAS, CONGER & ELLIOTT, and J. R. WILLIAMS, for plaintiff in error.

GEE & GEE, HARRY ANDERSON, ENDICOTT & ENDICOTT, and JOE A. PEARCE, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was a bill filed in the circuit court of White county to contest and set aside the will of Genevieve Marshall. The will was executed November 11, 1916, and the testatrix died October 23, 1917, leaving no husband and no descendants. Her nearest of kin and heirs were cousins. The contestants, Elizabeth K. Carroll and Harriet H. Hayes, were first cousins of testatrix, who at the time of her death owned a farm in White county of 1240 acres, worth approximately $100,000. The farm was inherited by testa-

trix, two sisters and a brother, from their father. None of the sisters or the brother ever married. The brother, Dan, died about 1905, and one of the sisters predeceased him. They left surviving them as their only heirs, Betty Marshall and Genevieve Marshall, the testatrix. Betty died in January, 1916, and testatrix became the sole owner of all the property and estate. The bill alleges she was not of sound mind and memory when she executed the will; that for many years prior to its execution she had been suffering from the effects of a paralytic stroke; that John M. Eckley, the chief beneficiary of the will, by the exercise of undue influence procured it to be made; that he was employed by Betty and testatrix as their attorney in 1911, and from that time until the death of testatrix he was their attorney and adviser; that after the death of Betty he remained the trusted and confidential adviser of testatrix, acted as her agent in looking after her property and business, rented the land, collected the rents, paid interest on indebtedness, furnished such sums of money as he saw fit for her support and maintenance, and had full management of her property and business; that by reason of this relationship he secured her faith and confidence and she did whatever he advised her to do with reference to her property, and that he took advantage of this relationship to induce her to make the will; that prior to the execution of her last will Eckley induced her to sign a will which he prepared, in which she devised to him the same property devised him in the last will and also named him as executor and trustee; that afterwards he represented to her the first will would not stand in law because he had written it and that she would have to make another will; that he induced her to consent to his procuring a scrivener to come to her home and copy the will he had prepared; that he did procure a scrivener to come to her home November 11, 1916, who prepared the will in controversy; that she was ignorant of the effect of her will and was induced to sign

it by reason of the trust and confidence she had in Eckley and because he advised and requested her to do so; that he induced her to believe her next of kin had no affection for her or claim upon her bounty, and she, being wholly under his influence, yielded to his wishes and requests, and that the will was not her free and voluntary act. The property disposed of by the will was approximately of the value of $100,000 and was incumbered for $18,000. All of it except about $17,000 was devised to Eckley. Defendants answered the bill, denying its material allegations; denying testatrix was of unsound mind or that the will was procured by Eckley by undue influence, and averring it was the free and voluntary act of testatrix. The jury found the instrument was the last will and testament of Genevieve Marshall, and the court, after overruling a motion for a new trial, entered a decree on the verdict and dismissed the bill. One of contestants has sued out this writ of error.

The will recited that testatrix desired to make certain gifts and bequests, and as there was a large indebtedness against the estate it would be necessary to sell land to pay debts and bequests. She therefore devised all her estate to John M. Eckley as trustee, and authorized him to sell either at public or private sale, or to lease or mortgage, in his discretion, any of the land, granting and conferring on him full power for that purpose without any order of the court. The trust was to continue five years to enable him to sell land and pay debts and bequests. The trustee was not required to give bond. At the end of five years $200 was to be placed in a permanent fund or trust to maintain a cemetery lot. She gave to John Friedley and wife the use and occupancy of the house and lot they were then living on so long as either of them lived, and at their death it was to go to the First Methodist Church of Maunie, Illinois, the village in which testatrix lived. By the third clause she gave Annie York, who had lived with her and her sister, Betty, several years, the residence in which testatrix lived

in Maunie, her household and kitchen furniture and $3000 in money. By the fourth clause she gave $10 to her heirs-at-law who might inherit through her mother. By the fifth clause she gave Bessie Higgins a flax-spinning wheel, and stated she made no bequest to her cousin Bettie Carroll, one of contestants, because she had an abundance of this world's goods. By the sixth clause she gave Hattie Hayes, the other contestant, $1000, a gold sword and another sword, a revolver and a dirk, which were the property of Samuel D. Marshall, and requested the legatee to deposit them with the Illinois Historical Society. By the seventh clause she bequeathed Helen Hayes, Rosalie Eckley and Mary Carner, whom she described as her cousins, each $1000, and to Eugenia Hayden $2000. By the eighth clause she gave Asbury College, at Wilimore, Kentucky, $1000, the Conference Claimants Society of the Methodist church $2000 and $500 to the First Methodist Church of Maunie. She devised the residue of her estate to Eckley, whom she described as her cousin. The will recited that provision was made in accordance with the wishes of herself and her sister, Betty, who was then dead. The eleventh clause of the will provided that if any of the beneficiaries started or encouraged a suit to set it aside they should not share in her estate but the devise or bequest to such person should become a part of her residuary estate. She nominated and appointed Eckley as trustee and executor, without bond.

The first will made by the testatrix was written by Eckley and was executed March 10, 1916, and attested by two of the witnesses who attested the last will. By the last will the time the trustee was given to sell the land and pay debts and legacies was changed from three years to five years. The cemetery fund was increased from $100 to $200. The last will gave the house and lot devised Friedley and wife for life, to the First Methodist Church of Maunie at the death of the survivor. The last will changed the bequest to Annie York from $2000 to $3000, and also

devised her the testatrix's residence and the household and kitchen furniture. Bequests in the first will to three women of $500 each were omitted from the last will. The first will gave Eugenia Hayden $2000 in trust, while the last will made it a gift to her outright. There was no bequest of $500 in the first will to the Methodist Church of Maunie, and it contained no clause penalizing a beneficiary for contesting the will. Except for the slight changes noted, the last will was substantially identical with the first will in its language and in the disposition made of testatrix's property.

Contestants offered no proof that testatrix did not have mental capacity to make a will. The proof of proponents shows she was mentally capable of making a disposition of her property by will. She was about seventy years old when she died. After the death of the brother, Dan, in 1905, she and her sister, Betty, lived together, the only other person residing with them being Annie York, a servant. After Betty's death testatrix and Annie York lived together till testatrix's death. It appears from the testimony testatrix was of a retiring disposition and took little or no part in the management of the farm, which the evidence shows was the source of the income of the sisters. She said she was not capable of attending to the management and business of the land, and while she lived her sister appears to have looked after their business affairs. About 1908 N. M. Faunce, who had previously done work on the farm for the sisters, was employed as foreman to manage the farm, lease the land, collect the rents and to have general charge and management of the land. He made his reports and settlements with Betty,—never with testatrix. She was very religious and spent much of her time reading the Bible and other religious literature. She was interested in the church but does not seem to have actively engaged in the work of any of its enterprises. In February, 1909, she had a paralytic stroke. She made a partial recovery but was never well again. A second stroke caused her death.

Neither Betty nor testatrix appears to have had much business ability. They suffered a bill to be filed to foreclose a mortgage on their land, which was worth five times the amount of the mortgage. When the foreclosure suit was begun, in 1911, they employed Eckley, a lawyer who resided in an adjoining county and who was their cousin in a remote degree, to prevent a foreclosure decree. He secured a loan elsewhere to pay the mortgage off, and the foreclosure proceeding never went to a decree. The land is still incumbered with that loan. The sisters were pleased with Eckley in procuring the loan to pay off the mortgage, and from that time on he took an active interest in the management of their business. He acted in connection with Faunce until Betty's death. The next day after her funeral testatrix informed Faunce that she would not need his services any longer,—that Eckley would look after the land for her. From that time till testatrix's death he had the management of the farm, made leases, collected rents, and deposited some of the money to the credit of testatrix and some of it to his own account in his bank in McLeansboro. The sisters had kept their account in a bank in Carmi, but before her death testatrix also had an account in the bank in Maunie. Eckley drew checks on the bank account to pay interest on the mortgage, taxes and other expenses connected with the operation of the farm, and testatrix signed checks, frequently written by someone else, on the account in her name. Eckley apparently was authorized to transact the business without interference of testatrix, and we do not understand he ever had an accounting and settlement with his principal. There is no intimation that he appropriated any of the money wrongfully, but the proof shows he had the full and complete trust and confidence of testatrix, and that relation continued until her death. Eckley wrote the will executed in March, 1916. Afterwards he told testatrix the will would probably not stand in law because of that and advised her to get some disinterested

person to write another will, and at her request he secured lawyer Parish, of Carmi, to go to her house and write the will of October 23, 1917. With the exceptions we have noted, that will was the same as the first one. It is evident from the identity of the language in the last will that it was copied from the first one. Parish testified he had the former will before him when he drew the last will, also a memorandum made by testatrix of alterations she desired. She told Parish that Eckley had advised her that as he was a beneficiary in her will she ought to get someone else to write it for her. Eckley gave Parish a check signed by testatrix in payment for his services. Eckley went to testatrix's house with Parish when he went to write the will but did not stay till it was prepared. After its preparation was completed he returned to the house, and testatrix asked him to get the witnesses to come and attest it, which he did. After the will was signed and attested she delivered it to Eckley.

As we have said, contestants offered no proof to sustain the allegation of unsoundness of testatrix's mind. Plaintiff in error insists the proof did sustain the allegations of the bill that testatrix was feeble in body and mind; that Eckley, the chief beneficiary, was her confidential adviser and agent; that he occupied a relation of trust and confidence toward her and was instrumental in procuring her to make the will; that these facts established *prima facie* the charge that the execution of the will was the result of undue influence exercised by Eckley, unless rebutted by proof of proponents that the will was fairly and voluntarily made and was not the result of undue influence. Counsel insist the court refused all instructions offered by contestants on that branch of the case and practically refused to submit that question to the jury. Whether the court erred in this respect depends on whether contestants' evidence tended to show Eckley was instrumental in procuring the will to be made. There can be no doubt Eckley sustained a confiden-

tial or fiduciary relation to the testatrix. We do not understand proponents to deny this, but they insist the rule of law contended for by contestants does not apply, for the reason that the evidence of contestants did not tend to show Eckley was instrumental in procuring the will.

The first question to be determined is whether Eckley was instrumental in procuring the will to be made. Proponents offered proof that before Betty died both the sisters said they intended to leave the greater part of their estate to Eckley because he had kept them from losing the farm, and that after Betty's death testatrix said she wanted Eckley to have the greater part of her property, and after she had made her will said she had given Eckley more than all the rest of her relations because he came next to her brother, Dan, and that she had made the will just like she and Betty had planned to dispose of the property. The will itself recites it was made in accordance with the wishes of testatrix and her sister. We have endeavored to state the substance of the competent proof on both sides which tends to throw any light on the question whether Eckley was instrumental in procuring the will to be made. There can be no doubt a relation of trust and confidence existed between testatrix and Eckley and that he was the dominant party. The law is well settled that where one is instrumental in procuring a will to be made a presumption of undue influence is created, which must be rebutted by proof that he did not abuse or betray the confidence reposed in him and that the execution of the will was the free and voluntary act of the testator. (*Weston* v. *Teufel,* 213 Ill. 291; *Trubey* v. *Richardson,* 224 id. 136; *Leonard* v. *Burtle,* 226 id. 422; *Gum* v. *Reep,* 275 id. 503; *Teter* v. *Spooner,* 279 id. 39.) We express no opinion as to the merits of the case on the evidence, but are of opinion the circumstances proved by contestants, under the well settled authorities, tended to show Eckley was instrumental in procuring the will to be made, and the evidence required the court to

submit the issue of undue influence to the jury by proper instructions.

Contestants requested the court to instruct the jury on the presumption the law creates where the chief beneficiary of the will sustains to the person making it a relation of trust and confidence and was also instrumental in procuring the will to be made, but the court refused such instruction. The court did instruct for proponents on the general rule of law applicable where it is sought to set aside a will on the ground of undue influence, but did not instruct on the theory presented by contestants' evidence that the rule of law stated in the cases above cited is applicable. We are of opinion the evidence of contestants was sufficient to require the court to submit to the jury, under proper instructions, whether Eckley was instrumental in procuring the will to be made and the rule of law applicable. It was not required that contestants establish by a preponderance of the evidence that Eckley was instrumental in procuring the will to be made in order to require the submission of that question to the jury by proper instructions. If their testimony fairly warranted that inference, then the law raises certain presumptions which must be rebutted. It was the province of the jury to determine whether the presumption of law created by the testimony was rebutted. Even though the court was of opinion the evidence of contestants was not sufficient to justify a verdict and decree on their theory of the case, their evidence did tend to support their contention, and that being so, they were entitled to instructions on their theory. *Fessenden* v. *Doane,* 188 Ill. 228; *Eames* v. *Rend,* 105 id. 506.

Some of the instructions requested by contestants on the subject of undue influence were, perhaps, not entirely accurate and the court may have been justified in refusing to give them in the exact form presented, but under the state of the evidence contestants were entitled to have the

jury instructed on that question. It was not strictly correct to tell the jury that under a certain state of proof made by contestants the burden shifted to proponents to overcome it, and the presumption of law arising from it, by clear and convincing evidence. The universal rule is, that when a person occupying a fiduciary relation, who would not be a beneficiary in the absence of the will, is instrumental in procuring the will to be executed by which he is made a substantial beneficiary, the presumption of undue influence arises and the burden is on him to prove the will was freely made, without his influence. (28 R. C. L. 146.) The rules as to the burden of proof in will contests were clearly and succinctly stated in *Donovan* v. *St. Joseph's Home,* 295 Ill. 125, after a review of the authorities on that question, and need not be here repeated.

The decree is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

---

(No. 13963.—Appellate Court reversed; circuit court affirmed.)
LOGAN A. GRIDLEY *et al. vs.* JOHN H. WOOD, Plaintiff in Error.—(ORA W. GRIDLEY, Defendant in Error.)

*Opinion filed October 21, 1922—Rehearing denied Dec. 6, 1922.*