(No 30550.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM RICILI, Plaintiff in Error.

*Opinion filed May 20, 1948.*

TELLER, LEVIT & SILVERTRUST, of Chicago, (H. J. GOLDBERGER, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (JOHN T. GALLAGHER, MELVIN S. REMBE, and W. S. MIROSLAWSKI, all of Chicago, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Sam Ricili, hereinafter called the defendant, was indicted in the criminal court of Cook County for the crime of assault with intent to commit rape against the person of the prosecutrix. He entered a plea of not guilty, was tried before a jury and at the close of all the evidence was found guilty as charged in the indictment. He was sentenced to the penitentiary for a term of not less than five nor more than eight years. He brings this cause here on writ of error contending that he was not proved guilty beyond a reasonable doubt and that the court erred in its refusal of certain instructions.

The facts and circumstances as shown by the evidence

are as follows: On May 30, 1946, around 11:00 or 12:00 at night, the prosecutrix was sitting in front of her apartment at 1633 North LaSalle Street in the city of Chicago, when an automobile with two men drove up and stopped in an alley adjacent to her premises. The driver remained in the car and the other man, not identified other than having reddish-blonde hair, got out, came up to prosecutrix, and, at the point of a gun, forced her to get into the car. They immediately drove away, she being seated between them. When the car started moving her assailant put his gun away and attempted to rape her but she successfully fought him off. They drove around and into an alley where they stopped the car and the unidentified man got out and locked the car at which time the driver attempted to rape her. She screamed and fought him off and was pushed from the car and given a severe beating by both men after which they drove off.

The prosecutrix testified to the above facts and stated further that at the time she was being beaten in the alley a woman opened a window nearby and asked what the trouble was and she replied that two men were trying to rape her. She also testified that a man and woman coming down the street came to where she was, picked her up, placed her on a table on the sidewalk and called the police; that when the police arrived she was taken to the Henrotin Hospital and afterwards to Cook County Hospital, where it was found she was injured in the eye, arm and knee. She remained in the hospital for about ten days.

On June 11, 1946, prosecutrix was called to the police station for the purpose of viewing parties in a showup. She went to nine or ten showups but was not able to identify anyone until Thursday evening, June 27. She testified that on that date there must have been about twelve or thirteen line-ups and she picked out Sam Ricili, the defendant; that there were nine in the line-up and she was sitting about four rows back when she picked him out;

that she had a conversation with the detective, who took her into the back room and she said, "I am not sure it is him. I want to have a good look at him." When they brought him in, prosecutrix looked at him and said, "Yes, that is him." In her examination, she was asked, "Did you say something to this defendant?" Her answer was, " 'Sam,' I said, 'Why did you do this to me,' and he says 'I don't know you and never saw you before.' " This was the only testimony given for the prosecution with the exception of a police officer, who testified he sent defendant to the showup on June 27, 1946, and, on the following day questioned prosecutrix and defendant in the presence of each other; that at that time she told the story of being picked up by these two men, one displaying a gun, forcing her into a car and being taken for a ride on streets she did not know and their subsequently attempting to attack her and then being beat up and thrown into the alley. The defendant denied the charges and said he had never seen her before and was not the man that did it. The officer further testified the defendant said he was at home on May 30. When asked on examination, "Did you inquire where he was between the hours of twelve midnight and one A.M. on May 31, 1946?" the officer answered, "Yes, we did. We went to his home and were advised by his parents that he was home and sleeping." Evidence was offered for the defendant as to his good reputation and as to the alibi that he was at home on the night of the alleged assault, playing cards with his brother, Tony Ricili, and a friend, Carlo Giandalia.

The defendant contends the verdict is contrary to the manifest weight of the evidence because the testimony of the prosecutrix is not corroborated, either by any facts shown or by any circumstances, and that this court held in the case of *People* v. *Kazmierczyk,* 357 Ill. 592, that a conviction cannot stand on the uncorroborated evidence of the prosecutrix alone. In that case, however, it was

pointed out that in exceptional cases, where no other evidence was available, and where the fact that rape has been committed was established by clear and convincing proof, the testimony of the prosecutrix, uncorroborated by other witnesses, might be sufficient to justify a conviction. (*People* v. *Sciales*, 353 Ill. 169; *People* v. *Andreanos*, 323 Ill. 34.) We held in the late case of *People* v. *DeFrates*, 395 Ill. 439, that where the testimony of the prosecutrix is clear and convincing it is not necessary that she be corroborated in order to sustain a conviction. *People* v. *Vaughn*, 390 Ill. 360; *People* v. *Polak*, 360 Ill. 440; *People* v. *Sciales*, 345 Ill. 118.

In the *Kazimierczyk* and *DeFrates cases* the principal question involved was not that of identification, but the question whether or not a rape had actually been committed. We are of the opinion that the question in the instant case hinges on identification, and it is defendant's contention that his identification is insufficient. In the case of *People* v. *Gold*, 361 Ill. 23, cited by defendant, the court said, "No man should be deprived of his liberty unless his identification as the party charged with a crime is under such circumstances and with such positiveness that there can be no reasonable doubt of its correctness." And, further, "Where the conviction of a defendant rests upon an identification which is doubtful, vague or uncertain and which does not produce an abiding conviction of guilt to a moral certainty it should be reversed."

The evidence as disclosed by this record reveals, as we have heretofore pointed out, that the prosecutrix, in viewing the defendant with eight others in the line-up, at first stated to a detective who took her into a back room to again look at the defendant, "I am not sure it is him. I want to have a good look at him." It is true that after he was separated from the others and brought into the back room alone, she testified, "Yes, that is him." However, the record clearly discloses that she was not positive

in her identification on first observation and at a time when he was presented to her with others in a showup. Some doubt was further placed on this identification by the testimony of the prosecutrix that defendant was the driver of the car, which was refuted by positive testimony by all of the witnesses for the defendant that he "could not" and "never did" drive a car. This would lend some doubt as to his being the man she identified especially in view of no evidence being offered in contradiction. Prosecutrix testified the other assailant who accompanied the defendant was the man who, at the point of a gun, ordered her into the car and no doubt more or less of her attention was directed to him during the ride and assault which followed. It was also disclosed by the evidence that almost a month had elapsed from the date of the assault and the date she identified the defendant at the police station. This, of course, presents a very close question on this phase of the case.

As we have heretofore stated, evidence was offered in this case as to defendant's good reputation, as well as evidence pertaining to an alibi. While evidence of good reputation is not proof of innocence, it is not to be disregarded, and it may be sufficient to raise a reasonable doubt as to defendant's guilt. (*People* v. *Gold,* 361 Ill. 23; *People* v. *DeSuno,* 354 Ill. 387; *People* v. *Koloski,* 309 Ill. 468.) In this case defendant's good reputation stands uncontroverted and must be given some consideration and weight. (*People* v. *Peck,* 358 Ill. 642.) Neither can we disregard the evidence of alibi where the only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime. (*People* v. *Gold,* 361 Ill. 23; *People* v. *Peck,* 358 Ill. 642; *People* v. *DeSuno,* 354 Ill. 387.) While the identification and whereabouts of the defendant when the crime was committed are questions for the jury, yet where from the entire record there is reasonable doubt of the guilt of the defendant a

judgment of conviction cannot be permitted to stand. *People* v. *Burr*, 356 Ill. 452; *People* v. *McPheron*, 354 Ill. 381; *People* v. *Steinbuch*, 306 Ill. 441.

Our attention is directed at this point to an instruction which was tendered by the defendant and refused by the court, which was as follows: "The Court instructs the jury that in determining whether or not the defendant has been identified as the person who committed the offense charged against him, if any such offense was committed you must consider all the testimony in the case, both that for the prosecution and that for the defendant, considering the means of identification; the circumstances under which he was identified, the opportunity for identifying the said defendant; the influence brought to bear on persons claiming to identify defendant; the description of his apparel as stated by the witnesses and the probabilities or improbabilities that it was the defendant, and, if after so judging and weighing the testimony you are not satisfied beyond all reasonable doubt that the defendant has been correctly identified as the person who committed the offense as charged in this indictment, it will be your duty to find the defendant not guilty."

The instruction was refused and no other instruction was given to the jury covering the question of identification. It was the position of the People that the instruction as offered contained elements not shown by the evidence and it is pointed out in particular that it was not an error to refuse the instruction because the clause "the influence brought to bear on persons claiming to identify defendant" was not supported by any evidence. A similar instruction was tendered in the case of *People* v. *LeMar*, 358 Ill. 58, which was refused by the court. We there held that this was reversible error as no instruction was given by the trial court on the question of the defendant's identification, and that the refusal to submit any instruction to the jury on this important issue may have prejudiced defendant,

especially since he was identified only by one of four eyewitnesses to the crime. He had a right to have the jury instructed on his theory of the case. *City of Chicago* v. *Cruse*, 337 Ill. 537; *Carroll* v. *Eckley*, 305 Ill. 367.

We think in the instant case it was error to refuse this instruction. If there could have been any question as to that part of the instruction above referred to it could have properly been modified by the court striking out the line objected to as set out above, thus not depriving defendant of a crucial instruction pertaining to the law as applicable to his case.

It is not necessary, however, to reverse this case solely on the refusal of the instruction, for the reason that, after a careful consideration of the evidence offered, we are of the opinion that it does not show defendant's guilt beyond a reasonable doubt, and that the verdict is contrary to the manifest weight of the evidence. The judgment is, therefore, reversed and the cause remanded to the criminal court of Cook County for a new trial.

*Reversed and remanded.*