THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*. ALBERT A. MOORE, a/k/a ALFRED A. MOORE, Defendant-Appellant.

(No. 57572;

First District (5th Division)—May 18, 1973.

Marshall A. Levin, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, James R. Truschke, and Anthony Shaker, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

In a jury trial defendant was convicted of rape, deviate sexual assault and two counts of aggravated battery.* He received consecutive sentences of six to 12 years for rape, six to 12 years for deviate sexual assault, and three to nine years for one count of aggravated battery. He appealed to the Illinois Supreme Court, and the case was transferred to this court.

On appeal he contends that: (1) the evidence did not prove him guilty beyond a reasonable doubt; (2) the court erred in admitting testimony of an out-of-court identification of defendant by the victim's son; (3) the court erred in permitting a police officer to testify as to the out-of-court identifications of defendant by the victim's son since this was hearsay; and (4) the testimony of the victim's son concerning an out-of-court photographic identification of defendant was prejudicial hearsay, and that the testimony should not have been allowed due to the State's failure to produce the photographs involved.

The facts are as follows: On the night of January 22, 1970, Mrs. Annie Flowers and her niece, Ellen Smith, went to a film at a nearby theater.

---

* One count of aggravated battery was for use of a deadly weapon (Ill. Rev. Stat. 1969, ch. 38, par. 12—4(b—1)) and the other for causing great bodily harm (Ill. Rev. Stat. 1969, ch. 38, par. 12—4). Defendant was sentenced for only the latter of the two aggravated battery convictions.

After the film the two women walked home together part of the way, and then separated at about 11:00 P.M. As Mrs. Flowers approached her home, she heard footsteps behind her. As she turned, a man put a coat over her head and placed a sharp object against her neck. She was taken down the alley that ran behind her house, to the stairway of a building abutting the alley. Her assailant forced her to undress and to perform an act of deviate sexual conduct. She was able to escape and ran from the stairway to the alley screaming for help. Her assailant caught up with her as she ran down the alley, raped her and struck her on the back several times with a belt.

Meanwhile, Houston Flowers, the son of the complaining witness, received a call from Ellen Smith informing him that his mother should have reached home by that time. Houston went out in search of his mother. As he walked along 78th Street past the alley that ran behind his house, he heard a noise. He proceeded down the alley and eventually was able to see the outline of a man. As he came closer he noticed his mother lying in the alley. Houston struck the assailant on the shoulder with a cane he had been carrying. Houston then began to run and the assailant ran after him. Houston claimed that he also viewed the assailant when they reached Union Avenue. At the time, they were two residential lots apart. Houston faced the assailant for only a moment.

Later that night at a police station Houston allegedly identified defendant from a selection of several photographs. Mrs. Flowers was unable to identify her assailant from photographs. About a week after the incident, Mrs. Flowers was asked to view a suspect at a police station. She was not able to make a positive identification of her assailant. Houston Flowers was asked to view the defendant; at the time the defendant was seated alone in a room at the station. Prior to making an identification of the defendant, Houston asked the attending officer, "Is that the guy?"

There was a hearing on a motion to suppress the identification testimony of Mrs. Flowers and Houston Flowers. At the conclusion of the hearing the trial court granted the motion with respect to Mrs. Flowers but refused to suppress the identification testimony of Houston Flowers.

At trial Houston Flowers made an in-court identification of defendant and also testified as to the pretrial photographic and stationhouse identifications. A police officer gave testimony describing Houston's pretrial identifications. Defendant testified that he did not participate in the alleged crime and offered an alibi that he was at home at the time of the alleged offense; members of defendant's family corroborated his testimony.

*Opinion*

■■ Defendant's first contention is that he was not proven guilty

beyond a reasonable doubt. We agree. The only evidence connecting defendant with the offenses was the identification testimony of Houston Flowers, and we believe that his testimony was too weak to support a conviction as it did not reach the required quantum of proof beyond a reasonable doubt.

Houston's opportunity to observe the assailant at the time of the offense was limited. The lighting in the alley was so poor that Houston did not realize that the victim was present until he reached the assailant and struck him with a cane; and he was unable to discern what object the assailant was using to strike the victim. After striking the assailant, both he and the assailant ran. Thus, any observation made at this point was made while either he or the assailant or both were running. The final opportunity to observe the assailant came when they were separated by the width of two residential lots and faced each other for a moment.

Defendant was arrested because Houston allegedly picked out a photograph of defendant on the night of the attack. After defendant was taken into custody, the police did not conduct a line-up for identification purposes. Yet, when Houston was brought to the police station the following week in order to view defendant alone in a show-up, Houston asked Officer John McClain: "Is that the guy?"

Houston's initial description of the offender was vague. According to Officer McClain, who read from the report at trial, the description consisted of: "Five foot four, 165-170, medium brown, waist length jacket, brown pants, close cut hair, long sideburns." Defendant testified that he was five feet eight and one-half inches tall. He also testified that he never wore sideburns because he lacked the facial hair to grow sideburns.

Aside from the contradictions concerning sideburns, the only other reference to distinguishing characteristics was elicited by the defense counsel during the hearing on the motion to suppress the identification. When asked if he had noticed anything unusual about defendant's appearance, Houston answered: "Yes. At the time that I seen him he had pockmarks, whatever you call them, from where hair had grown in. He must have shaved it off. There was little bitty holes in his face." At the hearing Officer McClain also testified that Houston had mentioned the pockmarks. However, no testimony concerning pockmarks was elicited at trial, and there is nothing in the record to suggest that defendant has pockmarks and that this qualifies as a distinguishing or unusual characteristic.

■■ Houston also testified at trial that he had seen defendant near his high school prior to the assault. However, this testimony was extremely vague. He testified that he had seen defendant "more than two" times but "less than ten times." He further testified that these observations of

defendant took place during 1968 and 1969, and that the last such observation occurred "about" three months prior to the attack, but he could not recall the exact month. Contrary to the argument of the State, we do not consider this reference to previous viewings of defendant to constitute the type of situation in which the identity of a defendant is so well known to the witness that the witness is said to "know" the defendant. (*People v. Nelson*, 40 Ill.2d 146, 238 N.E.2d 378.) This is especially so when the record shows that Houston did not, in giving a description of the assailant to the police, mention the fact that he knew or had ever seen the assailant before. On the contrary, the day after the incident he told Officer David that he did not know the man who attacked his mother. Moreover, Houston's uncertainty at the show-up further demonstrates the inadequacy of his identification testimony.

Finally, we find further weakness in the identification testimony in that the photograph of defendant (and those from which it was selected) was never produced in court despite timely requests by defendant at both the hearing on the motion to suppress and at trial. Houston allegedly identified a photograph of defendant, and from this photograph the police allegedly made their arrest. Yet there was a nine day delay between the selection of the photo by Houston and defendant's arrest: Defendant was arrested while the officers were on a routine patrol. He was beckoned to the police car, the officers remaining at the car. Defendant offered no resistance and came over to the car. Although from the photographic identification the officers supposedly knew the person they were looking for, the arrest, nine days after the photo identification, was without a warrant. The officer called by the State attempted to account for this unusual sequence by stating that the police had been unsuccessful in finding defendant's name on any of the mailboxes at the building allegedly listed as defendant's address on the police records.

■■ The identification of the defendant was weak and his alibi was not effectively impeached. Defendant testified that he did not participate in the alleged offense and that he was at home at the relevant time. Members of his family fully corroborated his alibi testimony. Under these circumstances we believe the following language from *People v. Gardner*, 35 Ill.2d 564, 571, 221 N.E.2d 232, is applicable:

> "This court has often held that: 'In a criminal case it is incumbent upon the prosecution to prove beyond a reasonable doubt not only the commission of the crime charged but also its perpetration by the accused.  *  *  *  And while the identification and whereabouts of the defendant at the time of the crime are questions for the jury, yet, where from the entire record there is a reasonable doubt as to the guilt of the accused, a judgment of con-

viction will not be permitted to stand. (*People v. Ricili*, 400 Ill. 309; *People v. Gold*, 361 Ill. 23.) * * *'"

We find, therefore, that the identification testimony and the circumstances of defendant's arrest, which reflects on the identification, does not meet the burden required to convict defendant.

In view of this conclusion, we need not consider defendant's other contentions.

The judgment is reversed.

Reversed.

ENGLISH and LORENZ, JJ., concur.