(No. 42383.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
ABBIE HOFFMAN, Appellant.

*Opinion filed March 24, 1970.—Rehearing denied May 26, 1970.*

Gerald Lefcourt and H. Tim Hoffman, both of Chicago, (John Henry Schlegel, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Elmer C. Kissane and Joseph Romano, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Kluczynski delivered the opinion of the court:

Defendant, Abbie Hoffman, appeals from the judgment in the circuit court of Cook County rendered in a bench trial finding him guilty of violating section 31—1 of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 31—1), *i.e.,* "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be * * * imprisoned in a penal institution other than the penitentiary not to exceed one year * * *." A constitutional question gives us jurisdiction.

On August 28, 1968, at approximately 8:30 A.M., an unidentified woman, standing with a group, waved down a squad car occupied by officers Tavolacci, Lanas and Nalepa, and informed them that a man who had just walked past her had the vulgarism "FUCK" written in red letters on his

forehead. She then indicated that the defendant, who was walking with two companions was the man in question. The officers saw him put on a hat and enter a restaurant. They testified that they followed him into the restaurant, approached the booth where he and three companions were seated and asked him what he had under his hat. When he removed his hat, the officers observed the word written in letters about one and one-half inches in height on his forehead. The police then attempted to place him under arrest. He refused to leave stating: "No, I am going to have breakfast." Officers Tavolacci and Nalepa then left and conferred with a supervising sergeant, officer Lanas remaining inside. They returned and told Hoffman he was under arrest and that if he did not come peaceably he would be charged with resisting arrest. Defendant refused. One of the officers grabbed him but he pulled away and locked his arm with that of his wife who was sitting next to him. The police then pulled both of them from the booth whereupon Hoffman fell to the ground, went limp and had to be forcibly removed.

Defendant's version of the arrest, which was substantially corroborated by his wife and a companion, was that the police officers entered the restaurant, approached the booth where he was seated and asked him to remove his hat. He questioned their authority to make a search, asked that he be allowed to finish his breakfast, and requested the officers to contact a certain named police commander to determine whether or not he should be arrested. Hoffman stated that two of the officers left the restaurant and returned several minutes later, told him he was under arrest and to remove his hat. He did so and was forcibly taken from the restaurant. He further testified that he offered no resistance.

Defendant was tried on charges of disorderly conduct (Ill. Rev. Stat. 1967, ch. 38, par. 26—1) and resisting a peace officer (Ill. Rev. Stat. 1967, ch. 38, par. 31—1). The court acquitted him of the former charge and found him

guilty of the latter offense. The trial court imposed a sentence of one-year probation, the first 15 days to be served in the House of Correction.

Defendant alleges that he was coerced into waiving his sixth amendment right to trial by jury by the failure of the trial court to grant appropriate relief from prejudicial pretrial publicity; that the trial court's construction of section 31—1 of the Criminal Code of 1961 deprived him of due process of law; that under a proper interpretation of Illinois law, he was not guilty of resisting arrest; and that he was not proved guilty beyond a reasonable doubt.

Defendant's claim of adverse pretrial publicity was grounded on the fact that on the evening before trial, an assistant corporation counsel for the city of Chicago appeared on a late-night television show and discussed the coming trial. Only two brief statements of the corporation counsel wherein he discussed the coming trial and expressed his opinion of defendant's guilt have been made part of this record. These have been patently taken out of context. The record indicates that defendant was also present and participated but his statements were not submitted for the record. Furthermore defendant concedes that the statements made "probably would not have provided a basis for challenging a juror for cause * * *." The statements merely dealt with defendant's arrest for disorderly conduct, the charge of which he was ultimately acquitted. On the following day, defendant, urging the "prejudicial" nature of these statements, moved the court for either a continuance for "two years", a change of venue to the "State of New York", or a dismissal of all charges against him. However, there was no showing as to how he would be prejudiced if he were not granted the relief requested and the trial court accordingly denied his motions.

In this court, defendant now makes the argument that the pretrial publicity was a "fine ploy" on the part of the prosecutorial team to deprive him of a jury trial. He con-

tends that he was coerced into waiving his right to a jury trial because relief from the pretrial publicity was denied. He argues thusly: "The prosecution had an almost uncontested case on the facts of the disorderly conduct case it had charged, but the case on resisting arrest was a hotly contested one in which the state had no disinterested witness. By exposing the facts of the disorderly charge and then making that easy proof the testimony of the same witnesses on the resisting became more plausible—'for hadn't the officers told the truth in the first part of their testimony.' " We find this argument to contain more rhetoric than reason. Defendant completely ignores the fact that he also voluntarily appeared on that same television program, and concedes that the statements made were insufficient to cause prejudicial error. Furthermore, there has been no showing that the ruling of the trial judge was erroneous. The granting of a continuance was within the sound discretion of the trial judge and absent a showing of abuse, that determination will not be reversed. (*People* v. *Kurtz*, 37 Ill.2d 103.) Further, there was no showing why a change of venue to the "State of New York" was appropriate or even how the State of New York could attain jurisdiction over this matter. We find no error.

Defendant next argues that the trial court's interpretation of section 31—1 of the Criminal Code deprived him of due process of law. It is his contention that his arrest was unlawful and that he had a right to resist an unlawful arrest. We find this argument to be without merit inasmuch as defendant's arrest was based on probable cause. The arresting officers testified that they placed defendant under arrest after being informed by a citizen on the street, that he had a vulgarism printed on his forehead, and they observed it. In *People* v. *Hester*, 39 Ill.2d 489, 513, 514, we said that " 'reasonable cause' to make an arrest without first obtaining a warrant means something less than evidence which would result in a conviction (*People* v. *Jones*, 38 Ill.2d 427,

431), and the absence of a warrant may justifiably be made to depend upon 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.' (*Brinegar* v. *United States*, 388 U.S. 160, 175, 93 L. Ed. 1879, 69 S. Ct. 1302; *People* v. *Pitts*, 26 Ill.2d 395, 399.)" The officers here were justified in relying on the information received from the woman and, the usual requirement of prior reliability which must be met when police act upon "tips" from professional informers does not apply to information supplied by ordinary citizens. (See *People* v. *Hester*.) Accordingly, we find that these officers had probable cause to arrest defendant for disorderly conduct. The fact that the defendant was later discharged of this offense in no way detracts from the validity of the arrest.

Defendant then argues that under a proper interpretation of Illinois law, he was not guilty of resisting arrest because the arrest was unlawful. Having determined that defendant's arrest was lawful, we need not consider this issue.

Finally, defendant complains that he was not proved guilty beyond a reasonable doubt. Essentially, he argues that the clash of testimony in this case is so extreme that proof beyond a reasonable doubt was not adduced. We find that defendant's argument is predicated on the question of the credibility of the testifying witnesses. The resolution of testimonial conflicts is appropriately a matter for the trier of fact and only where the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt will the trial court's determination be disturbed. (*People* v. *Hampton*, 44 Ill.2d 41, 44; *People* v. *Flowers*, 14 Ill.2d 406, 410.) After a thorough review of the record in this matter we find the evidence supports the conviction. *People* v. *Raby*, 40 Ill.2d 392.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*