THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES L. BLACK, Defendant-Appellant.

Fifth District   No. 79-20

Opinion filed January 7, 1980.

John H. Reid and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, and Myron A. Hanna, law student, for appellant.

Lloyd Middleton, State's Attorney, of Pinckneyville (Raymond F. Buckley, Jr., and Ann E. Singleton, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Charles L. Black, appeals from a judgment of conviction for unlawful delivery of a controlled substance entered in the Circuit Court of Perry County following a bench trial. On appeal, defendant contends that he was not proved guilty of unlawful delivery of a controlled substance beyond a reasonable doubt and further contends that the trial court erred in refusing to allow defendant to cross-examine a police officer about a statement made to him by a third party, which statement was against the declarant's penal interest and tended to exculpate defendant.

Jerry Woolsey, a special investigator for the Perry County sheriff's office at the time of the events in question, testified that he was called to the scene of an accident which had occurred west of Pinckneyville. There he found a woman, Mary Kay Olson, lying unconscious in the road and defendant, who appeared "very distraught." Apparently, Ms. Olson, who died a day after the accident and to whom defendant was charged with delivering the substances, had jumped from defendant's van while he was driving. In response to the investigator's questioning whether Ms. Olson was under the influence of alcohol or drugs, defendant replied that she had taken "some orange microdots," a street name for LSD, the night before. Defendant added that he had given her the drug the previous evening at a party held at his residence. In attendance at the party were Mary Kay Olson and her sister, Jane Olson. Jane had asked defendant "for some hits of orange microdots." Defendant refused to sell the drug but gave her "four hits" in exchange for "some whiskey."

On cross-examination, Officer Woolsey testified that on the day following the accident defendant gave a statement to the police. Woolsey recalled that in the statement defendant admitted having a total of 13 hits of which 6 were kept by defendant, 4 were given to Jane, 2 were distributed to Tammy, and one was given to Lynn. Nowhere in the statement, according to Woolsey, did it state that defendant gave any LSD to Mary Kay.

In response to questioning by the court, Woolsey again testified that

at the scene of the accident he asked defendant whether Mary Kay had taken any alcohol or drugs. According to Woolsey, defendant replied: "Yes, LSD, or orange microdots at a party at my house last night." Then in reply to the court's question—"Is that all he said. Did he make any statement as to delivery by himself?"—Woolsey stated, "That's all he said, your Honor." Following a short redirect examination, the court again questioned the witness. At this time, however, Woolsey again testified that defendant had told him at the scene of the accident that he had given Mary Kay "orange microdots." On re-cross-examination, Woolsey apparently clarified his testimony, stating that at the time of the accident defendant said that he had distributed "orange microdots" to Mary Kay. Woolsey added that in the statement made to police a day after the incident defendant made no claim of having given the drug to the deceased and that the statement tended to prove that "if anyone was given LSD, it was Jane Olson."

Deputy Sheriff Tim Russell and Frank Mangin, a deputy sheriff at the time of defendant's arrest, were present when defendant made his statement. Their testimony concerning the statement made by defendant to police substantially corroborated the testimony of Woolsey. Russell indicated that defendant never stated during the course of making the statement that he had given LSD to the deceased, while Mangin testified that he could not recall defendant making any assertion that he had delivered such substances to her. We note, however, that during the redirect examination of Mangin, the State read the following portion of the recorded statement:

> "Woolsey: * * * Jane Olsen initiated the conversation about buying.
>
> Black: Yeah, Yeah. I told her I won't sell it. I will give it to her, but nobody else was doing acid that night except us three that I know of.
>
> Woolsey: When you say three, who is that?
>
> Black: Me, Jane and [Mary] Kay.
>
> Woolsey: Okay.
>
> Black: I didn't give nobody else no acid or anything, just them."

Charles Louis testified that he had attended the party at defendant's home on the evening prior to the accident. He stated that he did not hear defendant and the deceased discussing "orange microdots" but remembered a conversation between defendant and Jane Olson concerning a trade of LSD for some whiskey.

When Louis went to the county jail to give a statement to the police he met Jane Olson as she was leaving the building. Jane told him: "Now I have to go home and tell mom and dad that I gave Jane the acid." Louis

was apparently referring to Jane giving acid to Mary Kay, not that she gave it to herself.

Brian Flannery testified that he had also attended the party in question. He saw Jane Olson leave the party with LSD in her hand, accompanied by her sister, Mary Kay, and another individual. According to Flannery, they were going to purchase whiskey for the party. When they returned, the sisters appeared to be under the influence of the LSD. Flannery concluded that he did not see defendant give Mary Kay any pills.

Jane Olson did not testify as she was apparently in Texas at the time of trial.

Defendant's initial argument on appeal is that the testimony of Woolsey concerning statements made by defendant at the scene of the accident was unclear and uncertain and raised a reasonable doubt of defendant's guilt; that the statements made to the officer at that time demonstrated that defendant was so distraught he did not know what he was saying; and that the evidence established, at most, the delivery of a controlled substance to Jane Olson, and not her sister, Mary Kay. Defendant's argument is without merit.

There was ample evidence in the record from which the trier of fact could determine that defendant, on two separate occasions, made incriminating statements to police officers. The trier of fact had the opportunity to weigh the minor inconsistencies in Woolsey's testimony and come to the reasonable conclusion that defendant told the officer at the scene of the incident that he had given LSD to Mary Kay. The following day, defendant made a statement to the police in which he admitted: "I didn't give nobody else no acid or anything, just them [Jane and Mary Kay]." Although the police officers present at the time the statement was made testified that defendant did not admit to giving the LSD to the deceased, the portion of the recorded statement read into evidence, without objection, belies their testimony.

■■■ We recognize that an equally plausible interpretation of the events in question is that defendant handed the LSD to Jane who then delivered it to her sister; however, the record is clear that the controlled substances were intended for both Mary Kay and Jane. Evidence supporting this conclusion is defendant's admission that he gave acid to both sisters and the fact that both sisters went to purchase the whiskey in order to exchange it for the LSD. It has long been established that:

> "* * * where the supplier knows that narcotics are being purchased on behalf of a third person he may be charged with the sale to the third person whether or not he had actual contact with or other knowledge of the ultimate receiver. [Citations.] The

circuity of the transfer of money and narcotics cannot alter the substance of the transaction." (*People v. Bliss* (1970), 44 Ill. 2d 363, 368-69, 255 N.E.2d 405, 408-09.)

(See also *People v. Witherspoon* (1963), 28 Ill. 2d 290, 192 N.E.2d 337; *People v. Mann* (1963), 27 Ill. 2d 135, 188 N.E.2d 665, *cert. denied* (1963), 374 U.S. 855, 10 L. Ed. 2d 1075, 83 S. Ct. 1923.) We believe the same reasoning applies even where the delivery is not a sale for cash but is an exchange for goods or merely a gift to a third party. Accordingly, we conclude that the evidence established defendant's guilt beyond a reasonable doubt.

Defendant also argues that he was denied a fair trial by the trial court's refusal to allow him to cross-examine Woolsey about a statement allegedly made to him by Jane Olson. At trial, Woolsey testified on cross-examination that although he did not take a formal statement from Jane Olson he had talked with her about the events in question. After the State's objections to defense counsel's questions concerning the content of that conversation were sustained, defendant made an offer of proof to the effect that Jane told Woolsey that she "was the person who delivered the substance purported to be a controlled substance to Kay Olson."

■■■ It has long been the general rule that "extrajudicial declarations of a third party, not made under oath, that he committed the crime, are purely hearsay, and even though they are declarations against interest, are inadmissible." (*People v. Lettrich* (1952), 413 Ill. 172, 178, 108 N.E.2d 488, 491.) The rationale for excluding this type of evidence is to prevent perjured testimony that someone other than the accused committed the crime. The landmark case of *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, indicated that the rule prohibiting the admission of declarations against interest should not be applied mechanically as to violate a defendant's right to due process. (See *People v. Foster* (1978), 66 Ill. App. 3d 292, 383 N.E.2d 788.) Illinois courts have long recognized this danger and have allowed admission of these declarations under "compelling circumstances" that demonstrate their reliability. (*People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1.) In *Chambers*, four factors were suggested as reflecting upon the trustworthiness of the third party declaration. These four factors, (1) whether the statement was made spontaneously to a close acquaintance shortly after the crime had occurred; (2) whether the statement was corroborated by other evidence; (3) whether the statement was self-incriminating and against the declarant's interest; and (4) whether the declarant was available for cross-examination, have been used in Illinois in determining the admissibility of these statements (*People v. Craven*; *People v. Ireland* (1976), 38 Ill. App. 3d 616, 348 N.E.2d 277); and the

absence of any one or more of these factors has led Illinois courts to exclude the statements as inadmissible hearsay. See *People v. Foster*.

■■ In the present case, two of these factors were not present. First, the statement was made to a police officer, and not to a close acquaintance. As suggested in *Foster*, "[s]pontaneous admissions to a friend or confidant are more likely reliable than calculated statements made to a police officer." (66 Ill. App. 3d 292, 295, 383 N.E.2d 788, 790.) Second, the declarant was unavailable for cross-examination by the State thereby preventing the trier of fact from observing the demeanor and judging the veracity of the witness. We therefore hold that the trial court properly determined that the indicia of reliability of Jane's alleged statement to Woolsey was lacking and that the court did not err ·in refusing its admission.

We note that the danger of any prejudice to defendant resulting from the court's decision to exclude the third-party declaration to the officer was minimal where the court admitted Jane's more reliable statement to a close acquaintance, Charles Louis, concerning the same subject matter. Furthermore, although Jane's statement concerning her delivery of the LSD to her sister was self-incriminating, it did not necessarily exculpate the defendant. The evidence at trial established that defendant either delivered the substances to the deceased directly or delivered them to Jane with the intent that they be given to the sister. In either case, defendant was proven guilty of delivery of a controlled substance to Mary Kay.

For the reasons stated, the judgment of the Circuit Court of Perry County is affirmed.

Affirmed.

JONES, P. J., and KASSERMAN, J., concur.