THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS PERRY, JR., Defendant-Appellant.

Fourth District   No. 15722

Opinion filed February 29, 1980.

William J. Stevens, of Foss, Schuman & Drake, of Chicago, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Gary J. Anderson and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

CHARGES: Armed robbery, home invasion, burglary, and felony theft.

JURY: Guilty.

JUDGE: 20 years, concurrent.

THIS COURT: Affirm.

A jury trial resulted in defendant's convictions for three counts of armed robbery, one count each of home invasion, burglary, and felony theft. He was sentenced to 20 years for each armed robbery charge, 20 years for home invasion, 7 years for burglary, and 5 years for the theft—all to run concurrently. He raises eight issues on appeal.

But first, a brief review of the facts.

The incident in question occurred in the early morning hours of December 18, 1978, at a residence at 216 South Coolidge in Normal, Illinois. Three of the five occupants were in the home asleep at 1:20 a.m. when the doorbell rang. One of the residents, Ronald Sobkoviak, answered the call and encountered a thin black man, who asked for "Dan."

Daniel Flick was summoned, at which time the black man and several others forcibly entered the dwelling. In the next 15 to 20 minutes, the residents were threatened, beaten, cut, held at gunpoint, and robbed. Due to the lighting conditions, the residents were unable to identify the perpetrators but they were able to tell that one wore an Army fatigue jacket and that three different types of shoes were worn: blue tennis shoes with white stripes, hiking boots, and black dress shoes. A number of items which were taken by the intruders were identified at trial, including a Pioneer stereo amplifier and an Illinois State University class ring bearing the inscription "Greg Burmeister."

Martin Belz, the next-door neighbor of the victims, upon hearing of the event, informed police that he had seen a black over light yellow Buick equipped with amber colored lenses over the brights, and an object hanging from the rearview mirror. The automobile was outside his residence at the time of the offense.

This vehicle was spotted by an Illinois State University police officer at 4:24 p.m. outside the Watterson Towers dormitory. The officer observed four men loading items into the auto. As the auto left, it was

stopped by ISU and Normal police officers. The defendant was the driver of the auto and the Pioneer stereo amplifier was seen on the front seat. After defendant consented, the officers searched his dorm room and found the class ring. They also recovered an Army fatigue jacket and a pair of blue tennis shoes with white stripes. At trial, defendant stated that he had spent the entire evening in question with his girl-friend, Pamela Pharms, in her dorm room. He stated that he purchased the amplifier and ring from a man named "Bob" in a parking lot for $60. He borrowed the automobile from a friend to use while moving between dormitories.

## I. REASONABLE DOUBT

The defendant initially submits that in light of the fact that all of the evidence of guilt was circumstantial and the fact that there existed unrefuted alibi evidence, he was not proved guilty beyond a reasonable doubt. Defendant cites a number of cases wherein the appellate court has reversed convictions due to failure to prove guilt beyond a reasonable doubt. *People v. Moore* (1973), 12 Ill. App. 3d 78, 298 N.E.2d 202; *People v. Claudio* (1971), 3 Ill. App. 3d 309, 279 N.E.2d 39; *People v. Adams* (1969), 115 Ill. App. 2d 360, 253 N.E.2d 23.

We are not persuaded.

To support a conviction upon circumstantial evidence, it is only necessary that the proof of circumstances be of such a conclusive nature and tendency as to lead, on the whole, to a satisfactory conclusion and to produce a reasonable and moral certainty that the accused, and no one else, committed the crime. (*People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770.) It is essential that the facts proved be not only consistent with defendant's guilt but also inconsistent with any reasonable hypothesis of innocence. The State is not, however, required to establish guilt beyond the possibility of a doubt. *People v. Branion* (1970), 47 Ill. 2d 70, 77, 265 N.E.2d 1, 5, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213.

In the instant case, the defendant was the operator of an automobile which matched the description of the one at the scene. He possessed blue tennis shoes with white stripes and a green Army fatigue jacket—both no different from those worn by the perpetrators. Finally—the most incriminating circumstance—he was in possession of the spoils of the offense. Recent, exclusive, and unexplained possession of stolen items may give rise to an inference of burglary and armed robbery, and is sufficient to sustain the conviction unless overcome by facts or circumstances which create a reasonable doubt. *People v. Franceschini* (1960), 20 Ill. 2d 126, 169 N.E.2d 244; *People v. Bullock* (1977), 51 Ill. App. 3d 149, 366 N.E.2d 475.

■■ Defendant strenuously points to the unrefuted alibi evidence. As

noted above, defendant testified that he spent the entire evening with Pamela Pharms. Pharms corroborated this statement and another resident of the floor, Tina Holmes, stated that she saw the defendant on the dorm floor on the night in question. The State offered no evidence to refute this testimony. The jury was not, however, required to believe the alibi evidence, even though it was unrefuted. *People v. Grice* (1978), 60 Ill. App. 3d 7, 376 N.E.2d 283.

We further note that there were sufficient questions raised so as to discredit the corroboration of defendant's alibi. Holmes stated that she saw defendant between 7 p.m. and 12 p.m. on the night of December 17, 1978. She stated that she did not see defendant enter Pharms' room and that she would not have known if defendant had left the floor. Since the instant offense was committed sometime after 1 a.m., the testimony of Holmes was of little probative value.

The credibility of Pharms was also questioned. Pharms stated that she did not know whether she loved defendant or whether she hoped to marry him. The prosecution then introduced a copy of a letter Pharms had written in 1978 stating that she loved defendant and hoped to marry him. Clearly she was not a disinterested witness.

■■ Under the facts and circumstances of this case, the jury could have properly determined that defendant was guilty beyond a reasonable doubt, and we will not substitute our judgment for that of the jury.

## II. NEWLY DISCOVERED EVIDENCE

Defendant made a motion for a new trial which was accompanied by an affidavit signed by Kevin Marshall, stating that he was a witness to the transaction between defendant and the man named "Bob." The affidavit stated that he did not come forth earlier because he was afraid of retaliation from "Bob." Since the time of trial, Marshall had learned that "Bob" had been killed in Chicago.

To award a new trial on the basis of newly discovered evidence, the new evidence must be of such a nature that it would probably change the result on retrial; must be material to the issue and not merely cumulative; and must be of such a nature that it could not have been discovered prior to trial by the exercise of due diligence. *People v. Torres* (1977), 47 Ill. App. 3d 101, 361 N.E.2d 803.

Of the above requirements, one of these has not been met: Defendant has not shown due diligence in obtaining Marshall's testimony. At trial, defendant stated that there were a number of other people who had observed the transaction with "Bob." He had seen these people around but did not know them personally. Defendant, when asked if he had ever tried to locate the other individuals, replied negatively.

The trial court correctly denied the motion for a new trial.

## III. CROSS-EXAMINATION—PRIOR CONVICTIONS

On direct examination, defense counsel asked the defendant about his prior convictions for forgery.

"Q. And could you tell us, please, what, if any, problem you had last year with the law?

A. I wrote two bad checks, one for $14 and one for $41.

Q. And what happened after that?

A. I pleaded guilty to it.

Q. To what offense, please?

A. To forgery.

Q. And did you contest those charges?

A. No, I didn't.

Q. What is your plea in this case, Mr. Perry?

A. Not guilty."

On cross-examination, the trial court allowed the State, over defendant's objection, to elicit from defendant that his guilty plea was pursuant to a plea agreement. Defendant now claims that this constitutes reversible error.

■■ While proof of a prior conviction offered to discredit the testimony of the accused may only be done by introduction of a prior record and not cross-examination (*People v. Donaldson* (1956), 8 Ill. 2d 510, 134 N.E.2d 776), the prosecution's examination in this case was not improper.

■ As noted above, the fact of a prior conviction was brought out on direct examination by defense counsel. Additionally, the manner of questioning employed on direct examination indicates that defense counsel was trying to infer innocence on the present charges by the fact that defendant had pleaded guilty to other charges. This was highly improper (see *People v. Belvedere* (1979), 72 Ill. App. 3d 998, 390 N.E.2d 1239), and the State's Attorney was entitled to refute this inference by establishing the plea agreement.

## IV. JURY ARRAY

■■ Defendant, relying upon the Supreme Court's decision in *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, and *Duren v. Missouri* (1979), 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664, also argues that the trial court erred in refusing a hearing on defendant's challenge to the array of prospective jurors from which Illinois State University students had been excluded.

In *Taylor*, the court held unconstitutional a Louisiana statute which provided that women were not selected for jury duty unless they previously filed a written declaration of their desire to serve. In *Duren*, the court struck down a Missouri statute which provided an automatic exemption from jury service for any woman requesting not to serve.

Defense counsel, in the instant case, made an *oral* challenge to the jury array. The trial court denied the motion, noting that the motion must be presented in *written* form and accompanied by supporting affidavits.

The trial court correctly stated the law and was under no duty to conduct a hearing on defendant's oral motion. Ill. Rev. Stat. 1977, ch. 38, par. 114—3(b); *People v. Hughes* (1977), 46 Ill. App. 3d 490, 360 N.E.2d 1363.

## V. REBUTTAL

Defendant claims that reversible error occurred during the State's rebuttal to defendant's case.

We disagree.

Prior to trial, defendant informed the police that he had bought the ring and amplifier from a guy named "Bob" who entered Building *A* of Hillside Apartments. At trial, however, defendant stated that "Bob" entered Building *E*. On rebuttal, the State called the officer to whom the previous statement had been given. Robert Thicklen was also called to testify that he lived in Building *A* and that he did not sell the stereo equipment to defendant. On surrebuttal, defendant testified that Thicklen was not the "Bob" who had sold him the amplifier.

■■ Defendant claims that the State's use of Thicklen's testimony was reversible error. The error in allowing the testimony was one of relevancy. Thicklen's testimony did not contradict any evidence presented on defendant's case and therefore was not proper rebuttal. The only effect which Thicklen's testimony could have had was to establish that defendant's prior statement to the police was incorrect.

While it was error to allow Thicklen's testimony, an examination of the record—especially in light of defendant's testimony on direct examination and on surrebuttal—reveals that Thicklen's testimony was virtually devoid of probative value. Clearly the error was harmless in this case.

## VI. MOTION TO SUPPRESS

Defendant also claims that it was error for the trial court to deny his motion to suppress evidence found in the automobile and in his dormitory room as fruits of an illegal arrest. (Both searches and the arrest were made without warrants.)

A person may be arrested without a warrant when probable cause exists to do so. Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. The police need not have evidence against the defendant sufficient to sustain conviction.

(*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers at the time of the arrest. *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.

■■ In the instant case, the officers had received a report from Belz stating that a black over yellow Buick with amber headlights and a decoration hanging from the rearview mirror blocked the driveway next to 216 South Coolidge at the approximate time of the offense. Fifteen hours later, a car fitting the description was seen parked on the south side of an ISU dormitory. An officer observed three young men loading items into the automobile. Under the facts of this case, the trial court's conclusion that probable cause existed was not manifestly erroneous. *Clay*.

■■ Defendant also contends that probable cause was lacking because the police did not take actions to verify the statements made by Belz or to check his reliability. We note that in this case the informant was a private citizen and not a paid professional. As such, the officers were justified in relying upon his information without independent verification or examination of his reliability. See *People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N.E.2d 326, *cert. denied* (1970), 400 U.S. 904, 27 L. Ed. 2d 141, 91 S. Ct. 142; *People. v. Fisher* (1979), 76 Ill. App. 3d 331, 395 N.E.2d 54.

## VII. INTRODUCTION OF EXHIBITS

Defendant next argues that the introduction of 25 items of burglary proceeds which had not been connected to defendant was error and that certain other items—defendant's shoes, jacket, knife, and gun grip—were irrelevant and should have been excluded.

■■ Evidence is admissible where it fairly tends to prove the offense charged and any circumstances may be put in evidence which tend to make the proposition at issue more or less probable. Physical evidence may be introduced where there is proof to connect the evidence to defendant and the crime. (*People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848.) Admissibility does not require a showing that the evidence was actually used in the offense charged as long as it is shown that the object is at least suitable for the commission of the crime. (*People v. Meeks* (1978), 59 Ill. App. 3d 521, 375 N.E.2d 1001.) The propriety of receiving demonstrative evidence rests primarily within the discretion of the trial judge and the exercise of that discretion will not be interfered with absent an abuse which prejudices the defendant. *Fair*.

■■ It was not error to allow the introduction of defendant's shoes, jacket, knife, and gun grip. The victims of the offenses stated that the shoes and jacket, while not having any distinguishing characteristics, were in no way different from those worn by the perpetrator. Additionally, there is no question that the perpetrators were armed with at least one gun and

one knife. The common nature of these items affects the amount of weight given to the fact that they were found in defendant's possession but does not make them inadmissible.

■■ Likewise, we do not agree that the admission of items not found on defendant constituted reversible error. At trial, the jury was not told where the prosecution obtained these items. The defendant on direct examination denied ever seeing the items. Under the facts of this case, defendant has not shown any prejudice due to the admission of this physical evidence. *People v. Houck* (1977), 50 Ill. App. 3d 274, 365 N.E.2d 576.

## VIII. CONSTITUTIONALITY OF CLASS X LEGISLATION

■■ Finally, defendant asserts that Class X legislation (Pub. Act 80-1099, effective Feb. 1, 1978) is unconstitutional. It is claimed that by making all sentences determinative, eliminating the prison review board's discretion in granting parole release and by requiring minimum mandatory sentences, the legislature has effectively abandoned rehabilitation as an objective of sentencing. Defendant notes that article I, section 11, of the Illinois Constitution of 1970 provides that all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.

The fallacy of defendant's position is that it is based on the assumption that early release and parole are the *only* means of rehabilitation. This is a position we are not prepared to espouse. The methods of rehabilitating the criminal offender have been the subject of considerable, diverse discussion. We feel that this is a question peculiarly suitable for legislative investigation, analysis, and action. We do not feel that Pub. Act 80-1099 has abandoned the concept of rehabilitation.

Affirmed.

CRAVEN and WEBBER, JJ., concur.