THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VINCENT BELL *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-40

Opinion filed May 26, 1981.

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, Vincent Bell and Donald Hayes, and their co-defendants, Andrew and Lonnie Hampton, Shelby Ruff and Andre Banks, were indicted for the murder of Joseph Adrian Banks (Joseph) and for aggravated kidnapping and armed violence. Shelby Ruff testified at defendants' trial in return for an agreement with the State to drop all charges against him except for the charge of aggravated kidnapping, which was reduced to simple kidnapping. Lonnie Hampton's case was severed from those of the other defendants. After a stipulated bench trial, Lonnie Hampton was found guilty of murder and sentenced to 25 years imprisonment. Andrew Hampton pleaded guilty to a reduced charge of simple kidnapping and was sentenced to 36 months probation. Defendants Vincent Bell and Donald Hayes and the remaining co-defendant Andre Banks were tried by the court. Andre Banks was found guilty of aggravated kidnapping but, at the sentencing hearing, this finding was vacated and a finding of guilty of simple kidnapping was entered. Andre Banks was sentenced to 36 months probation, the first 6 months to be served in the House of Correction.

Defendant Bell was convicted of murder and aggravated kidnapping and sentenced to 25 years. Defendant Hayes was convicted of aggravated kidnapping and sentenced to 4 years. Both defendants appeal.

Bell contends that (1) he was not proved guilty of murder beyond a reasonable doubt where the State presented no evidence linking Bell to the shooting death of Joseph, and (2) he was denied due process of law and his right to present a defense when the trial judge refused to allow evidence to be admitted that a third party had confessed to the murder of Joseph. Both Bell and Hayes contend that (1) their convictions for aggravated kidnapping must be reversed or reduced to simple kidnapping, and (2) defendants' statements made after their arrests were improperly admitted as the product of an unlawful arrest.

On June 8, 1978, the victim Joseph, age 16, left his home for school. He did not return that day nor the next. On June 9, 1978, his mother filed a missing person's report with the Chicago Police Department. Approximately a week prior to his disappearance, Joseph had been told by his 15-year-old retarded cousin that she had been raped a day or so before. She pointed out the alleged rapists to Joseph.

On Monday, June 5, Joseph, his brother Hosea and a friend named "Doff" rounded up the two alleged rapists and a third man who was a friend of the two rapists, beat them up and drove them to the northwest suburbs of Chicago and put them out of the car.

In a statement given to the State's Attorney's office at the time of his arrest, Bell stated that the people who had been beaten up by Joseph and the others were his cousins Lonnie and Andrew Hampton and their friend Donald Hayes. On the night they were beaten, defendants and the Hamptons discussed getting revenge on Joseph, Hosea and Doff. On Thursday, June 8, Bell went to Westinghouse High School with Andre Banks.

Hayes, in his statement made at the time of his arrest, stated that he and Lonnie Hampton also were present, but that they had been told to remain out of sight until Bell and Andrew Banks caught Joseph. Both Bell and Hayes stated that all four defendants went to the high school specifically to find Joseph in order to beat him up. Bell saw someone he believed to be Joseph. Andre Banks accosted the person and took him into an alley. At this point Lonnie Hampton and Hayes joined the group. Lonnie identified Joseph, saying that he was the one who had kicked his brother in the eye. Lonnie then left to telephone his brother Andrew in order to tell him to bring his car so that Joseph could be taken elsewhere to be beaten up.

Shelby Ruff testified at defendants' trial that at 1:30 p.m. on June 8, 1978, he was in an alley at Fulton and Cicero with his cousin, Andrew Hampton, trying to fix the speakers in a car. Andrew's sister called out to Andrew that he had a telephone call. After answering the telephone, Andrew asked Shelby to drive him to Westinghouse High School. Shelby did not know why he was going there and did not ask why.

When they arrived at the high school, Shelby first saw Lonnie Hampton and defendant Bell. He then pulled the car up next to defendant Hayes, who got into the back of the car. Hayes did not say anything to Shelby. Lonnie told him to drive around to the alley behind the high school. Shelby did so and saw Lonnie Hampton, defendant Bell, Andre Banks and a fourth person whom he did not know. Shelby testified that it was not until the "last minute" that anyone told Shelby that the fourth person was Joseph. Bell said in his statement that by this time he had already hit Joseph once and that Lonnie Hampton had hit him two or three times. Hayes stated that Bell and Andre Banks had been hitting Joseph. Joseph then got into the back seat of the car where he remained for a few seconds when defendant Bell told him to get out. Someone told Shelby to open the trunk of his car and he gave the keys to Andrew Hampton, who handed them to someone else who opened the trunk. Bell told Joseph to get into the trunk and Joseph did so. Bell told Shelby to drive to the intersection of Huron Street and Austin Avenue, which he did with defendant Hayes and Andrew Hampton also in the car. To avoid the suspicion of the police, Bell, Lonnie Hampton and Andre Banks took the "El" to the intersection of Austin and Huron and were there when Shelby

arrived. Bell told Shelby to pull the car into an alley between Huron and Superior. Andre Banks remained behind at the rendezvous site.

In the alley a woman was putting her car in a garage, so Bell told Shelby to drive the car around to an alley between Huron and Erie. Near that alley was a vacant house which Lonnie Hampton entered to determine its suitability for their purposes. After finding that the house was satisfactory, Lonnie returned to the car. Joseph was then taken out of the trunk of the car and was taken inside the house by Lonnie Hampton and Bell. Hayes remained outside talking to Andrew Hampton for some time. Andrew Hampton left with Shelby Ruff at approximately 2:45 p.m.

Hayes stated that when Andrew and Shelby left, Bell told him to come upstairs and he did. Lonnie and Bell took Joseph to a room on the second floor of the vacant house. In his statement Bell said that he told Lonnie to do whatever he was going to do because it was not his (Bell's) affair. In response Lonnie began hitting Joseph. Bell joined in and Hayes, who had by then come inside, also begin hitting Joseph.

Bell stated, among other things, that during the beating Lonnie kicked Joseph in the throat and that Hayes hit Joseph 10 to 15 times. Bell stated that he, himself, hit Joseph 25 to 30 times with his hand and with an extension cord which was wrapped around his hand. Bell stated that Lonnie also had an extension cord and that Lonnie later began hitting Joseph with a broken broomstick handle. Bell told the police that Hayes used only his hands and feet to strike Joseph.

Hayes stated that when he reached the second floor room, Joseph, who was sitting on the floor at the time, was then pushed over by Lonnie and Bell, who began kicking Joseph. They told Hayes to go find Andre Banks and Hayes left. When he returned after being unable to find Andre Banks, Joseph was once again sitting. There was no blood, but Joseph's lip was now swollen and he had a knot on his right temple by his eye and another one on his left cheek. They told Hayes it was his turn to work over Joseph. After being told to join in the beating, Hayes answered no and said he wanted out. He told Lonnie and Bell that Joseph had had enough, but they pushed Hayes and told him to kick Joseph. He then kicked Joseph once in the leg and refused to strike Joseph again. Lonnie and Bell pushed Hayes on top of Joseph and Hayes then told them he had to go home and he left. As he was leaving, he saw that Lonnie and Bell had pulled Joseph's shirt up and they were whipping him with a white rope.

Bell stated that Hayes left after an hour and a half. Lonnie and Bell then tied up Joseph, using telephone cords which went around his neck, down to his hands and then to his feet. His hands were tied behind him and a coiled telephone cord was tied across his mouth. After having been in the building for one to two hours, Lonnie Hampton and Bell left, sometime between the hours of 4:30 and 5:00 p.m.

Bell stated that during the beating they were trying to find out the whereabouts of the other people involved in the earlier beating of Hayes and the Hampton brothers. Joseph had given them his uncle's name, his brother's nickname "Scony," some telephone numbers and some addresses. Bell recorded this information by writing it on a door with a felt-tip marker. After writing all the names, he then wrote that everyone involved in the earlier beating would die. At some point Joseph said to them, "[Y]ou have done all this here, you might as well go on and kill me." Bell and Lonnie replied that nobody wanted to kill him, they just wanted to get even.

Hayes stated that Lonnie came to him later that evening and said they had "taken care of" Joseph Banks and that Hayes should not talk about it. Lonnie told Hayes that they had beaten up, kicked around and whipped Joseph. Hayes said he never saw Joseph tied up but that Lonnie told him he and Bell had used wood on Joseph's legs. Lonnie did not say that Joseph had been killed.

On June 10 Investigator Michael Fleming of the Chicago Police Department investigated a body which was found on the second floor of an abandoned two-story frame building at 5815 West Huron Street. The deceased was a young male who was lying face up and without a shirt. There were several wounds on the face, chest and arms and a telephone wire was wrapped around the wrists, legs and neck. Fleming also observed a door with writing on it. After reading the missing person's file on Joseph Banks, he noted that the clothing description, age and size matched those of the body found at the Huron Street building. Investigator Fleming spoke with Mrs. Virgie Banks and Hosea Banks, Joseph's mother and brother. Hosea accompanied Fleming to the squad car where, from a photograph of the body found by Fleming, Hosea identified the body as that of his brother Joseph.

Hosea told the investigator about the rape of his cousin and the subsequent beating of the rapists. Fleming, accompanied by Hosea, returned to 5815 West Huron, where Hosea examined the writing on the door. Hosea told Fleming that the telephone numbers were similar to his brother's telephone number; that the name "Doff" which was written on the door was the nickname of a friend and that the addresses written there were near Doff's actual address on West Washington Street. The name "Scony" which was also written on the door was a nickname by which Joseph had referred to Hosea; that he knew by sight all three men whom he, Joseph and Doff had beaten up after the rape, but that he knew the first names of only two of the men—Lonnie and Donnie.

Investigators Nolan and Burke joined Fleming and they all proceeded to the area around Fulton and Cicero. At approximately 7 p.m. they saw a man walking north on Cicero. Hosea identified him as

"Donnie." Fleming then arrested the man, defendant Donald Hayes. Lonnie and Andrew Hampton were later arrested at their home at 4731 West Fulton. When Lonnie was placed in the squad car, Hosea identified him as one of the men whom he and his brother Joseph and Doff had beaten up and left in the suburbs. When these three defendants later filed a motion to quash their arrests, the judge found probable cause for their arrests on the basis of the facts set out above.

Sometime after 9 p.m., Fleming had a conversation with defendant Hayes and the Hampton brothers. All three men identified Shelby Ruff, Andre Banks and defendant Bell as being involved in the murder of Joseph Banks. Fleming then left the police station and arrested Shelby Ruff and Bell in the early morning of June 11, 1978. After a hearing on Bell's motion to quash his arrest, the judge found probable cause justifying the arrest and denied Bell's motion to quash.

Also on June 11, 1978, Dr. Robert Stein, chief medical examiner of Cook County, conducted an autopsy on the body of Joseph Banks. An external examination revealed contusions, abrasions, three bullet wounds of entrance, and wire ligatures about the mouth, neck, arms and legs of the body. Ligatures are depressions in the skin caused by a wire or an instrument applying external pressure. When Dr. Stein first examined the body, the wires were still on it and the ligatures on the body were consistent with the placement of those wires. There was a hemorrhage above the right eye, swelling of both the left and the right eyes and contusions on the inner portion of the lips. The contusions on the body appeared to be from flagellation, from blows by a round instrument and from shoe heels. Two of the three bullets had ricocheted off the chest without penetrating it. The third bullet perforated the heart and lung. It was this bullet wound which was the immediate cause of death.

Dr. Stein testified that the ligature strangulation would also have been sufficient to cause death independently of the bullet wound. The death from the ligature strangulation would not have been immediate. Dr. Stein did not find any signs of strangulation, but stated that these signs, hemorrhaging of the neck muscles, fracture of the hyoid bone may or may not be present and that a lack of oxygen in the brain cannot be detected in an autopsy. He had no opinion about how long the ligature marks had been present prior to the shooting, but that the age of the abrasions and contusions could have been approximately three to six hours and he saw no signs of healing.

Just prior to the hearing on defendants' pretrial motions, the State tendered to the court and to the defense attorneys an amended answer to discovery which added Shelby Ruff as a possible witness for the State, indicated that negotiations were in progress for Ruff's testimony, and contained the substance of a conversation between Ruff and Lonnie

Hampton. During defendants' trial, counsel for both defendants attempted to cross-examine Ruff concerning the statement in which Lonnie Hampton allegedly said that he, Hampton, had shot Joseph Banks. An objection to this testimony as hearsay was sustained in both instances.

Neither Bell nor Hayes testified at the trial.

■■ Defendant Bell contends that he was not proved guilty of murder beyond a reasonable doubt because the circumstantial evidence presented at trial indicated that he was not present when Joseph Banks was shot and that there is no evidence that murder was the object of the kidnapping plot. Defendant Bell also argues that his conviction for murder cannot be sustained because co-defendants Hayes and Andre Banks were acquitted of murder. We reject Bell's contentions. "Where one attaches himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, he becomes criminally liable for any wrongdoings committed by other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof, even though he did not actively participate in the overt act itself." (*People v. Hughes* (1962), 26 Ill. 2d 114, 119-120, 185 N.E.2d 834.) " '[P]roof of a common purpose need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of an act by a group.' " *People v. Tate* (1976), 63 Ill. 2d 105, 109, 345 N.E.2d 480, quoting *People v. Richardson* (1965), 32 Ill. 2d 472, 476, 207 N.E.2d 478, *cert. denied* (1966), 384 U.S. 1021, 16 L. Ed. 2d 1023, 86 S. Ct. 1935.

To prove accountability the State must prove beyond a reasonable doubt that (1) defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense, (2) this participation must have taken place either before or during the commission of the offense, and (3) it must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904; *People v. Ramirez* (1968), 93 Ill. App. 2d 404, 236 N.E.2d 284; Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).

A conviction may be sustained upon circumstantial evidence; however, the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that defendant and no one else committed the crime. (*People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801.) Proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of a doubt. (*Williams.*) In weighing evidence, the trier of fact is not required to disregard the natural inferences that flow normally from the evidence. (*People v. Dillon* (1975), 28 Ill.

App. 3d 11, 327 N.E.2d 225.) The trier of fact also is not required to search out potential explanations compatible with innocence and elevate them to the status of a reasonable doubt. *People v. Palmer* (1979), 76 Ill. App. 3d 1014, 395 N.E.2d 713.

Here, circumstantial evidence was sufficient to sustain defendant Bell's murder conviction on a theory of accountability. We find that the evidence showed defendant Bell was a member of a group bent on illegal acts which were dangerous in character and which would require the use of force that could result in the unlawful taking of a life and as such was accountable for the wrongdoing committed by another member of the group as a natural or probable consequence of the group's common purpose.

On the night defendant Hayes and the Hampton brothers were beaten up, Bell and Hayes and the Hampton brothers discussed getting revenge on Joseph and the others who had beat them. Bell, by his own statement, indicated that he, Andre Banks, Hayes and Lonnie Hampton went to Westinghouse High School to find Joseph in order to beat him up. Thus, Bell knew that an unlawful assault involving physical violence was contemplated. Bell struck Joseph a number of times while the group was near Westinghouse High School and was present when Andre Banks and Lonnie Hampton each struck Joseph at that time. To avoid arousing police suspicions, the group separated while traveling to a site suitable to administer a beating to Joseph. These facts give rise to an inference that the attack on Joseph was pursuant to a common purpose. The group had "embarked upon a course of action which was dangerous in character and could reasonably be expected to require the use of force that might result in the death of a human being, * * *." *People v. Hughes* (1962), 26 Ill. 2d 114, 120, 185 N.E.2d 834.

The evidence shows that Bell and Lonnie Hampton were the main participants in the beating of Joseph which took place inside the vacant house. Dr. Stein testified as to the severity of the injuries Joseph suffered and stated that the injuries sustained in the beating would have been sufficient to cause death independently of the bullet wound. Although there is no direct evidence as to who fired the fatal shot, we conclude that the evidence does not include any reasonable hypothesis of someone other than a member of the group that kidnapped Joseph having committed the crime. The following: (a) both Bell and Lonnie Hampton administered a severe beating to Joseph and were at the scene just prior to the shooting; (b) the absence of any evidence that anyone else was at the scene after the beating, (c) the severity of the beating, (d) Bell's threat written on the door at the scene directed to the others involved in the earlier beating of Hayes and the Hampton brothers that they all would die, and (e) Lonnie Hampton's statement to Hayes that Joseph "had been

taken care of" lead to the conclusion that the murder was a consequence of the beating. Although there is no evidence that Bell was present at the time Joseph was shot or that he in fact fired the fatal shot, we find that defendant Bell's participation in the severe beating of Joseph and his threat that everyone involved in the earlier beating of defendant Hayes and the Hampton brothers would die indicate that Bell at least solicited, aided, agreed or attempted to aid in the commission of the murder.

Reviewing the circumstances surrounding the murder in their entirety, we find that defendant Bell was guilty of murder on the theory of accountability.

Bell also argues that his conviction for murder cannot be sustained because co-defendants Hayes and Andre Banks were acquitted of murder. We do not agree.

■■ Judgments will not be reversed for inconsistency except when based on precisely the same evidence, identical in all respects as to all defendants. (*People v. Hobson* (1979), 77 Ill. App. 3d 22, 396 N.E.2d 53; *People v. Phoenix* (1975), 32 Ill. App. 3d 310, 336 N.E.2d 515; *People v. Taylor* (1974), 25 Ill. App. 3d 396, 323 N.E.2d 388; *People v. Hill* (1973), 14 Ill. App. 3d 368, 302 N.E.2d 403.) In the instant case, the evidence against Bell as to accountability for Joseph's murder was stronger than that against either defendant Hayes or Andre Banks. Andre Banks left the group at the intersection of Austin and Huron and never went to the vacant house. Hayes did go to the vacant house and was present for part of the beating. However, the evidence showed that while inside the house defendant Hayes kicked Joseph in the leg only once and left the scene shortly thereafter. Bell, on the other hand, along with Lonnie Hampton severely beat Joseph. It was Bell who wrote the threat on the door at the scene of the murder that everyone involved in the earlier beating of Hayes and the Hampton brothers would die. Because the evidence presented against Bell was not identical to the evidence presented against Hayes or Andre Banks, the fact that Hayes and Andre Banks were acquitted of murder does not require reversal of Bell's murder conviction.

Bell also contends that he was denied due process of law and his right to present a defense when the trial court refused to allow evidence that a third party had confessed to the murder of Joseph Banks.

As stated earlier, immediately prior to trial the State tendered an amended answer to discovery which added Shelby Ruff to the State's list of prospective witnesses. The amended answer also contained the substance of a conversation involving Bell, Lonnie Hampton, Shelby Ruff, Andrew Hampton and Andre Banks which occurred on June 14, 1978, in the Cook County Jail. The amended answer set forth the following:

> "The above five subjects were engaged in conversation prior to their Preliminary Hearing. All of the subjects were discussing

changing their statements. Lonnie Hampton suggested that they should all get some witnesses to testify to where they were. An argument began between Lonnie Hampton and Vincent Bell. Vincent Bell told Lonnie Hampton that he, Hampton, should tell the truth, because he shot the boy. The conversation then broke up. As everyone was leaving Shelby Ruff approached Lonnie Hampton and asked him if he shot the boy. Lonnie Hampton said yes, but that he didn't mean to."

During the trial, Bell's counsel began to examine Shelby Ruff concerning this statement. The State's objection to such examination was sustained.

■■■ The purported confession was clearly hearsay, but Bell contends that it was admissible as a declaration against Lonnie Hampton's penal interest. The general rule is that declarations against penal interest are inadmissible because of the hearsay rule, unless justice demands a departure from the rule. (*People v. Lettrich* (1952), 413 Ill. 172, 108 N.E.2d 488.) In *Lettrich*, the State's case connecting the accused to the offense consisted entirely of defendant's repudiated confession allegedly obtained by duress. The statement sought to be admitted into evidence was the confession of another person to having committed the crime. The supreme court held that under the special circumstances of that case the interests of justice required that the statement should have been admitted. The United States Supreme Court, in *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, held that the rule prohibiting the admission of declarations against interest should not be applied mechanically so as to result in a denial of a defendant's right to due process of law. In *Chambers*, the court set forth four factors which provide considerable assurance that hearsay declarations against penal interest will be reliable: (1) whether the statement was made spontaneously to a close acquaintance shortly after the crime had occurred; (2) whether the statement was corroborated by the other evidence; (3) whether the statement was self-incriminating and against the declarant's interest; and (4) whether the declarant was available for cross-examination. The absence of any one or more of these factors results in the exclusion of the statement as inadmissible hearsay. (*People v. Black* (1980), 80 Ill. App. 3d 116, 399 N.E.2d 647.) The statement here was not corroborated by other evidence. The *Chambers* reliability test was thus not met, and Lonnie Hampton's statement was properly excluded.

Further, even if Lonnie Hampton's confession should have been admitted in evidence, Bell's murder conviction would not be reversed because that conviction is not based on the theory that Bell himself fired the fatal shot, but on the theory of accountability. Even if Lonnie Hampton in fact fired the shot which killed Joseph, Bell's murder conviction would stand because he was accountable for Hampton's acts.

Defendants Bell and Hayes next contend that their convictions for aggravated kidnapping must be reversed or reduced to simple kidnapping because there is no evidence that great bodily harm was inflicted upon the victim Joseph Banks during the kidnapping. We do not agree.

Section 10—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 10—2), in its pertinent part, defines aggravated kidnapping as:

> "(a) A kidnaper within the definition of paragraph (a) of Section 10—1 is guilty of the offense of aggravated kidnaping when he:
>
> * * *
>
> (3) Inflicts great bodily harm or commits another felony upon his victim, * * *."

Dr. Stein testified that his examination of the body of Joseph Banks revealed numerous abrasions and contusions. There was hemorrhaging about the right eye, as well as swelling of both the left and right eyes and contusions on the inner aspect of the lips. On the victim's torso were semicircular contusions. Dr. Stein also testified that the injuries suffered in the beating would have been sufficient to cause death independently of the bullet wound.

■■ Bell, by his own statement, admitted he participated in the beating both before and after Joseph was driven to the abandoned building. Thus, because Joseph sustained great bodily harm, Bell was guilty of aggravated kidnapping.

■■ Hayes also was guilty of aggravated kidnapping. According to Bell's statement, Hayes using his hands and feet hit Joseph 10 to 15 times. According to Hayes' statement, he kicked Joseph only once in the leg. "While mere presence or negative acquiescence is not sufficient to constitute a person a principal to a crime, one may aid and abet without actively participating in the overt act, and if the proof shows he was present at the crime without disapproving or opposing it, the trier of fact may competently consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval and was thereby aiding and abetting the crime." (*People v. Clark* (1963), 30 Ill. 2d 67, 72, 195 N.E.2d 157.) Even discounting Bell's version of the incident and relying solely on Hayes' version, we find that because Hayes was present during a portion of the beating without disapproving or opposing it and at one point kicked Joseph, the trial court properly found that Hayes was aiding and abetting in the infliction of great bodily harm upon Joseph and properly found Hayes guilty of aggravated kidnapping.

The final contention of both defendants is that the trial court erred in denying their motions to quash their arrests and in admitting into evidence defendants' statements made after their arrests.

With respect to warrantless arrests, the Federal and State constitutional requirements of probable cause (U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6) and the State statutory standard of reasonable grounds (Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c)) are synonymous. (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.) A police officer has probable cause or reasonable grounds to arrest when the facts and circumstances within his knowledge are sufficient to warrant a man of reasonable caution in believing that a person is committing or has committed an offense. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) The police officer need not have evidence against the defendant sufficient to sustain a conviction (*Robinson; People v. Perry* (1980), 81 Ill. App. 3d 422, 401 N.E.2d 1263), but something more than a hunch or mere suspicion is required. (*People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 402 N.E.2d 915.) Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers at the time of the arrest. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280; *People v. Perry* (1980), 81 Ill. App. 3d 422, 401 N.E.2d 1263.) A reviewing court will affirm the trial court's determination unless it is manifestly erroneous. *People v. Sanford* (1980), 85 Ill. App. 3d 1010, 407 N.E.2d 810.

Hayes argues that his arrest, as well as the arrests of Lonnie Hampton and Andrew Hampton, were unlawful because the sole basis for these arrests was an unverified story told to the police by Hosea Banks. Bell argues that his arrest was unlawful because the sole basis for his arrest was the information the police obtained from Hayes, Lonnie Hampton and Andrew Hampton after their unlawful arrests.

Hosea Banks identified a picture of the body found at 5815 West Huron Street as that of his brother. Hosea told Officer Fleming that he, his brother Joseph and a friend named Doff had beaten up three men whom his 15-year-old retarded cousin had said had raped her. Hosea then went with the police to 5815 West Huron Street and examined the writing on the door. Hosea stated that the telephone numbers written on the door were similar to his brother's telephone number and noted that the name "Doff" written on the door was that of his friend who had participated in the earlier beating. Hosea also told police that the addresses written on the door were near Doff's actual address and that the name "Scony" which was written on the door was the nickname which Joseph had used for Hosea. Also written on the door was a threat that Scony and Doff would also die. The police were told by Hosea that he knew all three men by sight and that the first names of two of the men were "Lonnie" and "Donnie." Hosea then accompanied the police to the area around Fulton and Cicero. At approximately 7 p.m. they observed a man walking north

on Cicero Avenue. Hosea identified the man as "Donnie." The man was placed under arrest for murder and was later identified as defendant Hayes.

■■ Hosea Banks was a private citizen and not a paid professional informant. The police officers, therefore, were justified in relying upon his information without independent verification or examination of his reliability. (*People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N.E.2d 326, *cert. denied* (1970), 400 U.S. 904, 27 L. Ed. 2d 141, 91 S. Ct. 142; *People v. Perry* (1980), 81 Ill. App. 3d 422, 401 N.E.2d 1263.) Viewing the totality of the facts and circumstances known to the police officers at the time of Hayes' arrest, we find that the trial court's determination that the officers had probable cause to arrest Hayes was not manifestly erroneous.

■■ As to the lawfulness of Bell's arrest, where a co-offender who is under arrest and in custody supplies the police with a "tip" implicating alleged accomplices such statement of the co-offender may constitute probable cause for the arrest of the alleged participating accomplices. *People v. Jackson* (1979), 72 Ill. App. 3d 231, 390 N.E.2d 47.

In the instant case, Hayes, Lonnie Hampton and Andrew Hampton all independently identified Bell as also being involved in the kidnapping and murder of Joseph Banks. This information would have led a man of reasonable caution to believe that Bell had participated in the offense. The police thus had probable cause to arrest Bell.

Because defendants' arrests were based on probable cause and therefore lawful, the admission of defendants' statements into evidence was proper.

The convictions and sentences of defendants Bell and Hayes are affirmed.

Affirmed.

CAMPBELL, P. J., and GOLDBERG, J., concur.