THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR FISHER, Defendant-Appellant.

First District (1st Division)   No. 78-783

Opinion filed September 4, 1979.

Ralph Ruebner and Susan Bandes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant Arthur Fisher was charged by information with the murder and armed robbery of Larry Aaron. At the conclusion of the jury trial, defendant was found guilty. He was sentenced to serve 14 years to 14 years and 1 day for the murder conviction and 4 to 8 years for the armed robbery conviction, the sentences to run concurrently. Defendant appeals.

On appeal, defendant argues that his convictions should be reversed and the cause remanded for a new trial because (1) he was arrested without probable cause; (2) his confession while in custody was the fruit of an illegal arrest and should have been suppressed; and (3) the trial court erroneously refused to allow a witness for the prosecution to roll up his sleeves in order to ascertain whether he used narcotics.

We affirm.

The facts are not disputed. Theodore Brown testified that he lived at 1924 South Millard, Chicago, in a second-floor apartment above Benny Dean's drugstore. He stated that between March 15 and March 18, 1976, the defendant Arthur Fisher lived with him at his apartment. Defendant was known to him as "Country Cool." At approximately 8 a.m. on March 18, 1976, Brown left his apartment. The defendant did not possess a key to the apartment and was inside when Brown left. When Brown and a friend returned, they found the deceased Larry Aaron, alone in the apartment, slumped over with a sheet pulled over his head. Aaron was bleeding from his right temple and Brown observed his hammer lying on the floor near

Aaron. Aaron's pants were unzipped and his pockets were turned inside out. Brown then called the police and fire department who took Aaron to the hospital where he died later that day as a result of his injuries.

Benny Dean, the owner of the drugstore, testified that on March 18, 1976, he observed a car parked in front of his store. He observed someone in the car pass money to Larry Aaron. Aaron then got out of the car and walked up to Theodore Brown's apartment on the second floor. Dean later saw Brown accompanied by Al Banks return to the apartment. Banks remained in the drugstore to make a phone call, while Theodore Brown went up to the apartment. It was then that Brown discovered Aaron's body.

Dean testified that on March 18, 1976, he did not know the defendant. In fact, he did not meet the defendant until April 25, 1976, at Rosetta's Tavern. At that time, Dean was accompanied by Mr. James Brown who was interested in buying some merchandise from the defendant and who wanted Dean to loan Brown the money for the purchase. Dean stated that at this meeting, defendant admitted robbing Aaron and stated "I had to take that punk off. I didn't mean to hurt him that bad."

After this meeting, Dean called the police and told them what the defendant had said. The next day, on April 26, 1976, Dean picked defendant's picture out of a group of photographs. At this time, Dean knew the defendant only as "Country Cool."

On the basis of the information supplied by Brown and Dean, police officers arrested the defendant at his motel room on April 28, 1976. The arresting officers did not have a warrant for his arrest, nor had they attempted to procure one.

At the police station, defendant was questioned after being advised of his rights. Officer Thomas O'Connor testified that defendant then confessed. Defendant stated he was staying in Theodore Brown's apartment for the past three or four days because he had no money. On March 18, 1976, Aaron came to the apartment. Defendant was going through withdrawal and asked Aaron if he could give him a "fix" on credit. Aaron refused. Defendant then left the room and returned with a hammer in a sock. He saw Aaron looking out the window and struck him on the side of the head with the hammer. Aaron fell to the floor. Defendant dropped the hammer and searched through Aaron's pockets. He found $60 which he took with him and left the apartment. He did not know whether Aaron was dead or alive. Thereafter, he went to his girl friend's house and then to the motel where he was subsequently arrested.

On appeal, defendant first argues that his arrest was unlawful since it was not based on probable cause. He argues that Benny Dean was not a reliable informant since he had not acted as an informant before and had previously been charged with operating a drugstore without a license. His

reliability and objectivity being in serious doubt, his assertion that the defendant told him of hitting Aaron with the hammer was insufficient to establish probable cause for an arrest. Defendant therefore concludes that the trial judge at the motion to suppress hearing should have granted his motion to quash the arrest.

■■■ We disagree. In the instant case, the police were initially contacted by Dean. He was not an addict. His involvement with the case was that he operated the drugstore in the building where the murder and armed robbery occurred. He was an "ordinary citizen" and where an ordinary citizen is supplying information, his reliability need not be established as in the case of a paid informant. (*People v. Lucus* (1968), 41 Ill. 2d 370, 243 N.E.2d 228.) He is presumed reliable. (*People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N.E.2d 326.) The fact that Dean had been charged with operating a drugstore without having a registered pharmacist on duty did not affect his reliability. Absent contrary indications, one is presumed to be an ordinary citizen, obviating the prior reliability standard developed in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509. (*People v. Isenberg* (1977), 52 Ill. App. 3d 426, 367 N.E.2d 364.) Because there is no evidence suggesting that Dean was a professional police informant, we conclude that he was an ordinary citizen and that the information he supplied could be established as reliable by corroborating facts, including his detailed description of defendant.

■■ ■ Defendant also argues that the arrest was illegal because the arresting officer did not have an arrest warrant. Our supreme court has held that as long as probable cause exists, officers may enter a home and effectuate an arrest without a warrant. (*People v. Marigny* (1972), 51 Ill. 2d 445, 282 N.E.2d 734.) This is true even though a warrant could have been obtained. (*People v. Taylor* (1974), 58 Ill. 2d 69, 317 N.E.2d 97.) In the instant case, police officers were not acting upon vague or unreliable information. They had positive photo identifications by both Benny Dean and Theodore Brown. They had the admission made by the defendant to Dean. Further, the accounts given by Brown and Dean corroborated each other. We hold, therefore, that the arresting officer had reasonable grounds to believe that the defendant had committed the offenses of murder and armed robbery and that his arrest was lawful. See *People v. Taylor*; *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. denied* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408.

■■ Defendant next argues that his confession was the fruit of an illegal arrest and should have been suppressed by the trial judge at the motion to suppress hearing. We disagree. We have already concluded that the arrest was lawful. The confession, therefore, was not the fruit of an illegal arrest. Further, there is no evidence that the defendant was coerced into confessing. All evidence indicates that the defendant confessed after

being given his *Miranda* rights and after he had voluntarily and knowledgeably waived those rights.

Lastly, defendant argues that it was reversible error for the trial court to refuse to allow Theodore Brown to roll up his sleeves for signs of possible drug use, as requested by defense counsel. Brown had testified that he had not used drugs in four or five months. Because Brown's testimony was crucial to the State's case, defendant argues that it was reversible error for the trial judge to deny his request that Brown roll up his sleeves. This denial of an opportunity to impeach the witness' credibility, defendant argues, seriously damaged his case. Defendant cites *People v. Lewis* (1962), 25 Ill. 2d 396, 185 N.E.2d 168, for the proposition that a reversal is justified.

■■ *Lewis* is distinguishable from the present case. In *Lewis*, the court noted that a conviction stood or fell upon the credibility of the principal witness, who was an addict informant. That is not the situation here. In the present case, Brown's testimony went only to the facts that the defendant was in his apartment when he left, and had been living with him for several days. Brown was not a witness to the murder and armed robbery and could only testify as to the position and condition of the body when he discovered it. We feel that Benny Dean's testimony as to defendant's admissions to him, along with the defendant's confession to the police, were sufficient evidence to find the defendant guilty beyond a reasonable doubt. Any error caused by the trial judge's refusal to permit Brown to roll up his sleeves was harmless, since a conviction could properly be sustained without his testimony.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.