**Willard B. HUFFMAN and Helen Huffman, Plaintiffs,**

v.

**Clinton GRINNELL, in his official capacity as Sheriff of Lake County. Lake County Sheriff's Office, County of Lake, Illinois; the Village of Fox Valley River Gardens; the Village of Tower Lakes; Deputy Lewallan, individually and in his official capacity as a Lake County Sheriff's Officer; Sergeant N. Baibus, individually and in his official capacity as a Police Officer for Fox Valley River Gardens; Officer R. Chan, individually and as a Police Officer for Tower Lakes Police Department; Village of Tower Lakes Police Department, Defendants.**

No. 93 C 1100.

United States District Court,
N.D. Illinois,
Eastern Division.

March 9, 1995.

**1196**

Bruce A. Slivnick, Eileen Maloney, Lewis D. Clarke, James S. Fouts, Snyder, Clarke, Fouts & Associates, Waukegan, IL, for plaintiffs.

Daniel Playfair Field, Waukegan, IL, for Clinton Grinnell, Lake County Sheriff's Office, Deputy Lewallan and G. Manis.

Jeffrey Richard Zehe, Kevin P. Mohr, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for Village of Fox Valley River Gardens and N. Baibus.

William Charles Barasha, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, for Village of Tower Lakes, R. Chan and Village of Tower Lakes Police Dept.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

During the evening hours of February 20, 1992, the plaintiffs, Willard Huffman ("Huffman") and Helen Huffman, were at their home at 28621 Edgewood, in Cary, Lake County, Illinois. At approximately 7:50 p.m., defendant Nikolai Baibus ("Baibus"), on duty as a sergeant of police for the Village of Fox River Valley Gardens, stopped a vehicle driven by David Schultz ("Schultz") for speeding. Schultz told Baibus that he was upset and in a hurry to get out of the area because a man had just pointed a gun to his face. Baibus issued Schultz a speeding ticket. Schultz explained to Baibus that he worked for Chrysler Credit Corporation and that he had gone to the Huffman residence to question them about payments on a vehicle. While there, an older man opened the door and pointed a gun at Schultz's head. Schultz also stated that he believed the older man had been drinking. Baibus asked Schultz if he wanted to pursue the matter and Schultz said that he did. Schultz agreed to sign a complaint about the incident. Baibus radioed defendant Ron Chan ("Chan") of the Village of Tower Lakes Police Department. When Chan arrived, Baibus informed Chan of Schultz's story.

Schultz then led Baibus and Chan to the area of the Huffman residence. They stopped around the corner from Huffman's home. Baibus called his dispatcher and asked him to send a unit from the police department with jurisdiction of the Huffman residence. At approximately 8:20 p.m., the dispatcher ordered defendants George Manis ("Manis") and Darrell Lewallan ("Lewallan"), both uniformed Lake County Sheriff's Deputies, to respond to Baibus' location near the Huffman residence.

When Manis and Lewallan arrived at the location near the Huffman residence, Schultz told them that, as an employee of Chrysler Credit Corporation, he had gone to the Huffman residence to inquire about the lack of payments on a vehicle. When Schultz arrived at the house, he saw no lights on in the front, but saw lights on at the back door. Schultz then knocked on the back door and an elderly male with grey hair and a white t-shirt opened the door and pointed a gun at him. Manis and Lewallan stated that they considered that probable cause existed to believe that Huffman had committed the offense of aggravated assault.

Manis, Lewallan, Chan, and Baibus, all in uniform, went to the Huffman residence to

question Huffman about the incident with Schultz. Schultz pointed out the house to the officers but stayed behind. Chan went to the back of the house. Manis, Lewallan and Baibus went to the window at the side of the house which looked into the living room. Through the window, they observed an older man with grey hair wearing a white t-shirt sitting on the couch. Helen Huffman was also in the living room in a chair. Manis went around to the front and knocked on the front door. Lewallan and Baibus stayed on the side of the house at the window. They observed that after Helen Huffman heard the knock, she went toward the door. Lewallan also observed Mr. Huffman go into the bedroom. Through the window, Lewallan and Baibus both observed Mr. Huffman in the living room area holding a small caliber semi-automatic pistol in his hand and sliding the chamber back as if to put a round into the chamber. Lewallan radioed to Manis at the front door saying, "He's got a gun." Lewallan and Baibus observed Mr. Huffman sit down on the couch with the gun.

Baibus and Lewallan then joined Manis at the front door. Manis knocked on the door a second time. Helen Huffman looked through a window by the front door, saw nothing, and then unlocked the front door. The officers never announced themselves as the police. Manis, followed by Lewallan and Baibus, entered the Huffman home. Manis retrieved the pistol from the couch.

When Lewallan saw Huffman with a gun, he felt there was a sense of urgency. Baibus was scared when he saw Huffman with the gun in his hand and drew his own weapon from its holster.

Huffman was arrested, handcuffed and charged with aggravated assault. When Huffman was removed from the house, he was identified by Schultz as the same man who had pointed a gun at Schultz earlier that evening.

Plaintiffs filed a three count complaint on February 22, 1993. Count I is an action against defendants Lewallan, Manis, Baibus, Chan, the Lake County Sheriff's Office, Tower Lake Police Department, and Fox Valley River Gardens' Police Department for the use of excessive force against plaintiffs in violation of their rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. Count II is an action against defendants for illegal search, seizure and arrest in violation of plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. Count III is an action against defendants for assault and battery under state law.

All defendants filed a combined motion for partial Summary Judgment pursuant to Fed. R.Civ.Proc. 56(b). Defendants principally request Summary Judgment on Count II (plaintiffs' allegations of illegal search, seizure and arrest), claiming that defendants are entitled to qualified immunity.[1] Defendants also request that Summary Judgment be entered against Helen Huffman as a party Plaintiff in this case and in favor of Defendant Chan in all allegations of Plaintiffs' complaint.

## STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "[s]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1985). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is

---

1. Defendants request that Summary Judgment should be entered against the Plaintiffs making any reference to a causal relation between the incident of February 20, 1992, and the stroke suffered by Mr. Huffman on May 17, 1992. This Court believes that this motion is more appropriately viewed as a motion in limine. However, because Plaintiffs concede this claim, this Court will exclude all evidence regarding the potential cause of Mr. Huffman's stroke.

no genuine issue of material fact." *Id.* at 248, 106 S.Ct. at 2510.

A genuine issue of material fact exists only when "[t]he evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 258, 106 S.Ct. at 2515. The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the nonmovant's favor. *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip–Side Productions, Inc. v. Jam Productions, Ltd.,* 843 F.2d 1024, 1032 (7th Cir.1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988).

## DISCUSSION

### COUNT II: ILLEGAL SEARCH, SEIZURE AND ARREST

### I. FALSE ARREST

Probable cause exists where "the facts and circumstances within [the officer's] knowledge and of which he had reasonably trustworthy information [are] sufficient in themselves to warrant a prudent person in believing that the [suspect] had committed or was committing an offense." *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1246 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 937, 130 L.Ed.2d 882 (1994) (citing, *Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir. 1993)); *see also Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). Probable cause must be based on more than bare suspicion. *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). Courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Sheik–Abdi,* 37 F.3d at 1246 (citing *Mahoney v. Kesery,* 976 F.2d 1054, 1057 (7th Cir.1992),

quoting, *Richardson v. Bonds,* 860 F.2d 1427, 1431 (7th Cir.1988)).

Accurate and reliable information from a third person can establish the requisite probable cause to justify a warrantless arrest by police officers. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Information supplied by an ordinary citizen which leads to an arrest without a warrant carries a presumption of reliability. *People v. Winter,* 6 Ill.App.3d 112, 285 N.E.2d 223 (1st Dist.1972); *People v. Fisher,* 76 Ill.App.3d 331, 32 Ill.Dec. 107, 395 N.E.2d 54 (1st Dist.1979); *People v. McCleary,* 208 Ill.App.3d 466, 476, 153 Ill.Dec. 476, 482, 567 N.E.2d 434, 440 (1st Dist.1990) ("The police may ... properly rely on information from a private citizen without first verifying the citizen's reliability."). The Seventh Circuit has held that, "when an officer has 'received his information from some person—normally the putative victim or an eyewitness—who seems reasonable to believe is telling the truth,' he has probable cause." *Grimm v. Churchill,* 932 F.2d 674, 675 (7th Cir.1991). The existence of probable cause for an arrest precludes a § 1983 claim for unlawful arrest. *Mark v. Furay,* 769 F.2d 1266 (7th Cir.1985).

In this case, Schultz was an unpaid citizen informant. When stopped for speeding, he told Officer Baibus that an elderly man in a white t-shirt had pointed a gun at him when Schultz went to the man's residence to inquire about delinquent car payments. The plaintiffs allege that the information Schultz gave to Officer Baibus was unreliable since Schultz had a motive to lie in order to evade receipt of a speeding ticket. Plaintiffs further allege that "the description Schultz gave to the officer (the man who pointed the gun at him was elderly, with gray hair and was wearing a white t-shirt) was wholly inadequate" and too general to establish probable cause. (Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment at 5).

The information Schultz provided to the officers carries a presumption of reliability because Schultz was an ordinary citizen informant. Further, the reliability of Schultz's statement is bolstered not only by Schultz's

agreement to pursue the matter after he received a speeding ticket, but by Schultz's action of leading Officer Baibus and Officer Chan to the location of Huffman's residence. When Officers Lewallan and Baibus were at the window of the Huffman residence, they saw an elderly man with gray hair in a white t-shirt inside the house. This man was at the location provided by Schultz and fit the description given by Schultz of the alleged assailant.

Based on an objective standard, this Court finds that the defendants acted reasonably in believing that the information Schultz provided created probable cause to arrest Huffman. Thus, although probable cause is generally a question of fact, *Sheik–Abdi,* 37 F.3d at 1246, in this case the undisputed facts do not create a genuine issue.[2] Accordingly, since no reasonable jury would find that the defendants lacked probable cause to arrest Huffman, this Court grants Summary Judgment in favor of the defendants on plaintiffs' claim of false arrest.

## II. QUALIFIED IMMUNITY

The Fourth Amendment to the Constitution guarantees the right to be free from unreasonable searches and seizures. The Supreme Court stated that "[t]he principal protection [guaranteed by the Fourth Amendment] against ... intrusions into private dwellings is the warrant requirement imposed ... on agents of the government who seek to enter the home for purposes of search or arrest." *Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984). A warrantless search and seizure violates the constitutional rights secured by the Fourth Amendment, unless such police action falls within an exception based on the presence of exigent circumstances. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) ("[warrantless] searches and seizures inside a man's house are per se unreasonable

in the absence of ... exigent circumstances.") If a reasonable officer could have believed that he had probable cause for a warrantless entry or for an arrest, he is entitled to qualified immunity and thus shielded from liability for civil damages. *Maltby v. Winston,* 36 F.3d 548 (7th Cir. 1994).

The issue of whether public employees are entitled to qualified immunity is determined by an objective standard, *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), "like the 'reasonableness' component of the Fourth Amendment itself." *Gordon v. Degelmann,* 29 F.3d 295 (7th Cir. 1994). Courts must ask whether "a reasonable officer could have believed [his] warrantless search to be lawful, in light of clearly established law and the information the ... officers possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). Misunderstandings of the law which result in an officer reasonably, but mistakenly, concluding that his actions are lawful does not bar immunity. *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), *see also Dellums v. Powell,* 566 F.2d 167, 185 (D.C.Cir.1977). Thus, unless a discretionary function of a government official violates "clearly established statutory or constitutional rights of which a reasonable person would have known," his actions are shielded from liability for civil damages. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. In other words, only if no reasonable officer could have believed that the officer in question had probable cause will qualified immunity cease to protect. *See Klein v. Ryan,* 847 F.2d 368, 375 (7th Cir.1988). The Supreme Court further explained that "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law ..." *Malley v. Briggs,* 475 U.S. 335, 337, 106 S.Ct. 1092, 1094, 89 L.Ed.2d 271 (1986). Qualified immunity bars a § 1983 claim against government officials.

2. Moreover, the Seventh Circuit has stated that "[i]f a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is any reasonable basis to conclude that

probable cause existed." *Biddle v. Martin,* 992 F.2d 673, 676 (7th Cir.1993) (citing, *Cross v. City of Des Moines,* 965 F.2d 629, 632 (8th Cir.1992) citing, *Hunter v. Bryant,* 502 U.S. 224, 226–28, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)).

**1200**

■ Exigent circumstances must be present in order to justify a warrantless entry into a home for the purpose of effecting a search or making an arrest. *United States v. Berkowitz*, 927 F.2d 1376 (7th Cir.), *cert. denied*, 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991); *Payton v. New York*, 445 U.S. at 590, 100 S.Ct. at 1382 ("the Fourth Amendment draws a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.") The Supreme Court has noted that the following exigent circumstances, *inter alia*, can justify a warrantless intrusion into a private dwelling: police officers in hot pursuit of a fleeing felon, imminent destruction of evidence, a need to prevent a suspect's escape, or a risk of danger to police or to other persons inside or outside a dwelling. *Sheik–Abdi*, 37 F.3d at 1244, n. 3 (citing, *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)).

■ This Court has shunned the idea of categorically defining an exigent circumstance and rather has questioned the reasonableness of the police in not obtaining a warrant given the "circumstances that confronted them." *Llaguno v. Mingey*, 763 F.2d 1560, 1564 (7th Cir.1985) (en banc). Thus, in determining whether exigent circumstances exist for a warrantless, nonconsensual entry into a person's home, the guiding principle is reasonableness, and each case must be decided on the basis of the facts known to the officers at the time they acted. *People v. Yates*, 98 Ill.2d 502, 456 N.E.2d 1369, 75 Ill.Dec. 188 (Ill.1983); *People v. Abney*, 81 Ill.2d·159, 41 Ill.Dec. 45, 407 N.E.2d 543 (Ill.1980).

■ In this case, believing probable cause existed to arrest Huffman, the defendants approached the Huffman residence and Lewallan and Baibus peered in a window while Manis went around to the front door. After Manis knocked on the front door, Lewallan and Baibus saw Mr. Huffman holding a pistol and chambering a round. Lewallan radioed to Manis that Huffman had a gun. At this point, the issue is whether exigent circumstances existed, based on the facts known to the officers at the time, to justify

the officers entering the residence without a warrant. We have already established that probable cause existed to arrest Huffman. But, probable cause to arrest Huffman or merely to question Huffman about the incident with Schultz does not justify warrantless nonconsensual entry into his home absent exigent circumstances.

In determining whether exigent circumstances existed in this case, this Court must ask if the officers' action of entering the Huffman home was objectively reasonable, without having first obtained a warrant, in light of the circumstances that confronted them. This Court recognizes that, in viewing the facts in a light most favorable to the Plaintiffs, the officers never announced themselves. Inside of his own home, Huffman had a right to retrieve a pistol. This Court does not know if Huffman ever intended to use the pistol or even threaten the person at the door with the pistol. However, the determination of whether the officers are entitled to qualified immunity is predicated on the circumstances as understood by the officers outside of Huffman's home, independent of Huffman's subjective beliefs.

Defendants Lewallan and Baibus expressed fear of their safety, and the safety of Manis, who was at the front door, upon seeing Huffman with a pistol and chambering a round. Manis stated that when he entered the house, his main concern was the gun. (Defendants' 12(m) Statement of Fact at 10). Lewallan stated, upon seeing Huffman return from the bedroom with a pistol, that he felt a sense of urgency. (Defendant's 12(m) at 9–10; Plaintiffs' 12(n) Statement of Fact at 6). Baibus also stated that he was scared when he saw Huffman with the gun and Baibus drew his own weapon from his holster. (Defendants' 12(m) at 10; Plaintiff's 12(n) at 7). Only if no reasonable officer could have believed that the officers' concern for their safety justified their warrantless entry into Huffman's home will qualified immunity cease to shield them from liability.

■ This Court believes that exigent circumstances existed to justify the officers' warrantless entry into the Huffman home. The officers' intrusion into Huffman's home

was reasonable based on their stated concern for their safety in light of seeing Huffman procure a gun and appear to chamber a round shortly after Manis knocked on the door. *United States v. Richards*, 937 F.2d 1287 (7th Cir.1991) (police officers had probable cause to enter home without a warrant where defendant pointed drawn gun at them); *United States v. Madewell*, 917 F.2d 301, 304 (7th Cir.1990) (where suspect drew a gun on officer, ejecting him from the apartment at gunpoint, police officers' belief that suspect posed threat to public safety provided exigent circumstances justifying warrantless entry into home for purposes of the Fourth Amendment). *See also United States v. Hendrix*, 595 F.2d 883 (D.C.Cir.1979) (Warrantless search was justified by exigent circumstances where there was a threat to human life resulting from the existence of a shotgun on the premises and available for use by the defendant); *U.S. v. Allison*, 639 F.2d 792, 794 (D.C.Cir.1980) (Exigent circumstances justified a warrantless search of a motel room after police learned of the presence of a gun in the motel room, for one, because "the presence of the gun made the situation more pressing and the emergency more critical because it constituted a passible 'threat to human life' "); *United States v. McKinney*, 477 F.2d 1184 (D.C.Cir.1973) (Exigent circumstances justified a warrantless search of defendant's hotel room after police were told that a shotgun was in defendant's room). In this case, the officers did not know if Huffman intended to use the gun or to threaten them with the gun. Manis, the one who first entered the house, could not see the precipitating events happening inside of the house. He was told only that Huffman had a gun. Forcibly entering the house to secure the gun was a reasonable course of action in light of these circumstances. Moreover, the protective sweep doctrine justifies the officers' limited search for Huffman's gun. *See United States v. Barker*, 27 F.3d 1287 (7th Cir.1994) (A protective sweep of a residence, incident to arrest, is justified when a police officer's reasonably believes that the area swept might harbor weapons and a person who could harm the officer or others.)

Plaintiffs argue that the officers' clandestine approach to the house created the exigency. As there is no dispute to the legality of the officers' approach, this Court will not analyze the tactics of the officers as compared to alternative actions they could have taken that might have avoided an intrusion into the Huffman home (such as approaching with their mars lights blaring). This Court is called on only to judge the reasonableness of the officers' warrantless entry into Huffman's home given the facts as they occurred. Once the officers chose to approach the house silently, it was Huffman who procured a pistol which created fear in the officers for their safety.

Thus, the officers are entitled to qualified immunity from plaintiffs' § 1983 claim because they acted reasonably given the circumstances they were faced with. Under the circumstances of this case, this Court cannot conclude that the officers believed that their warrantless search violated clearly established law. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40. Since this Court concludes that no reasonable jury could find otherwise, the defendants' request for Summary Judgment on plaintiffs' allegation of illegal search and seizure is granted.

### HELEN HUFFMAN AS A PLAINTIFF

In the Complaint, plaintiffs state that Helen Huffman's cause of action in this suit stems from the "substantial loss of service" she sustained as a result of her husband's injuries and ailments suffered at the hands of the defendants.

■ "Consortium" is defined as "the love and affection, the companionship and society, the comfort, aid, advice and solace, the rendering of material services, and any other elements that normally arise in a close, intimate, and harmonious marriage relationship." *Ozello v. Peterson Builders, Inc.*, 743 F.Supp. 1302, 1314 (E.D.Wis.1990). The Seventh Circuit has recognized loss of consortium as a constitutional deprivation when the loss is considered a liberty protected by the Constitution, such as the association between parent and child. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984) (victim's father's estate could recover damages

for loss of society and companionship under § 1983 because of city's breach of parent-child relationship). In the context of marriages, this Court has limited the extent of when loss of consortium is to be considered a constitutional deprivation. "Deprivations of the lesser services ... are not deprivations of liberty within the restricted meaning that the term bears in the Constitution." *Niehus v. Liberio,* 973 F.2d 526, 534 (7th Cir.1992) (former wife could not recover in § 1983 claim for loss of consortium based on psychological injury).

 This Court need not reach the question of whether Mrs. Huffman has a cause of action for loss of consortium under a § 1983 claim or if she should be considered, as Plaintiffs request, a pendant-party plaintiff under state law in Count III (assault and battery claim). Mrs. Huffman has only forwarded conclusory allegations in the Complaint. She alleges a "substantial loss of services" from her husband's injuries, but she has not set forth sufficient facts to show loss of consortium as a constitutional deprivation or under state law. In order to survive a motion for summary judgment, the complaining party must bring forth evidence in support of her claim which would be sufficient for a reasonable jury to find in her favor. *Celotex v. Catrett,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Here, Mrs. Huffman has provided no facts to support her allegations. Thus, defendant's request for Summary Judgment against Helen Huffman as a plaintiff on all counts of this case is granted.

### *RONALD CHAN AS A DEFENDANT*

Defendants' request that an order of Summary Judgment be entered in favor of Officer Chan for his lack of participation in the incident in question. Plaintiffs did not respond to defendants' request for Summary Judgment in favor of Chan. By failing to respond, plaintiffs. have waived their claim against Chan. In order to survive a motion for Summary Judgment, plaintiffs are required to bring forth sufficient evidence that would support their allegations against Chan. As they have forwarded no supporting argument, defendants' motion for Summary Judgment in favor of Officer Chan is granted.

### CONCLUSION

For the foregoing reasons, the defendants request for Summary Judgment against Count II (illegal search, seizure and arrest) of the plaintiffs' complaint is granted. Further, Summary judgment is entered against Helen Huffman as a party plaintiff in this case. Summary judgment also is entered in favor of defendant Chan. Given these rulings, Plaintiffs' Motion To Bar Defendants' Police Expert Testimony is denied as moot. This case is set for status on March 20, 1995, at 9:00 a.m. for the express purpose of setting a firm trial date.